Kenneth WILLIAMS, Plaintiff,

v.

**Reginald WILKINSON,
et al., Defendants.**

**No. 97–CV–213.**

United States District Court,
S.D. Ohio,
Eastern Division.

Nov. 29, 2000.

Jill S. Kirila, Squire Sanders & Dempsey, Columbus, OH, for plaintiff.

J. Eric Holloway, Ohio Atty. Gen., Columbus, OH, for defendants.

## OPINION AND ORDER

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on the Defendants' Motion to Dismiss filed on November 6, 2000, and on Plaintiff's Mo-

tion to Rule as a Matter of Law that Defendant Wingard's Policy Violated the Plaintiff's Fourteenth Amendment Rights, filed on November 6, 2000. This matter is also before the Court on the Defendants' Renewed Motion for Reconsideration filed on November 20, 2000.

The Plaintiff, Kenneth Williams, a prisoner, has brought suit against Defendants Curtis Wingard, Morris Bays and Pat Sharpe, alleging that his right to procedural due process under the Fourteenth Amendment was violated when he was not permitted to bring witnesses before the Rules Infraction Board. For the following reasons, the Defendants' Motions are **DENIED** and the Plaintiff's Motion is **DENIED.**

## II. FACTS AND PROCEDURAL HISTORY

On February 7, 1997, this suit was filed by Kenneth Williams, an inmate at the Madison Correctional Institute, proceeding *pro se.* On February 20, 1997, this Court dismissed the claims against Reginald Wilkinson, and the Plaintiff's claim brought under 42 U.S.C. § 1985.[1] On March 27, 2000, the Defendants filed their Answer. On June 26, 2000, this Court granted the Plaintiff's Motion for Appointment of Counsel.

On February 13, 1996, Mr. Williams was given a conduct report stating that he had tested positive for marijuana. The Plaintiff states that he did not provide the urine specimen; rather, another inmate, Allen Williams, provided the sample. The Plaintiff was not permitted to call Allen Williams or Ms. Sharpe, the Substance Abuse Coordinator at the Madison Correctional Institute, to testify on the Plaintiff's behalf before the Rules Infraction Board ("RIB"). The RIB concluded, before allowing Allen Williams to testify, that he would not be a credible witness. The Plaintiff had to proceed to his hearing

without either Allen Williams's or Ms. Sharpe's testimony and was found guilty.

On May 19, 1997, the Plaintiff moved for Summary Judgment. On August 26, 1997, this Court adopted Magistrate Judge King's Report and Recommendation denying the Plaintiff's Motion for Summary Judgment. Defendants were given until August 31, 1997 to file their dispositive motion. Following an extension, on September 15, 1997, the Defendants filed their Motion for Summary Judgment arguing that the Plaintiff's due process rights were not violated. On September 30, 1998, this Court denied the Defendants' Motion for Summary Judgment. On October 6, 1998, the Defendants filed a Motion for Reconsideration, which this Court denied on September 30, 1999.

The Defendants filed their Second Motion for Summary Judgment on June 8, 2000, arguing that they were entitled to qualified immunity as the Plaintiff's right to call witnesses was not clearly established. On July 17, 2000, the Defendants' filed a Motion to Stay Discovery and to Vacate the Trial Date. In response, the Plaintiff filed a Motion to Strike Defendants' Second Motion for Summary Judgment and Memorandum Contra Defendants' Motion to Stay Discovery and to Vacate the Trial Date. On September 11, 2000, this Court denied the Defendants' Motion for Leave to File a Second Dispositive Motion; denied the Defendants' Second Motion for Summary Judgement and denied the Defendants' Motion to Stay Discovery and to Vacate the Trial Date. The Court set this matter for trial on December 4, 2000.

This matter is now before the Court on the Defendants' Motion to Dismiss filed on November 6, 2000, and on the Plaintiff's Motion Seeking Judgment as a Matter of Law filed on November 6, 2000. It is also before the Court on the Defendants' Renewed Motion for Reconsideration filed on November 20, 2000.

---

1. Following the Court's Order, Defendants    Wingard, Bays and Sharpe remained.

## III. ANALYSIS

The Defendants argue in their Motion to Dismiss that the Plaintiff did not exhaust his administrative remedies before filing suit, and that the Plaintiff's case contains a factual impossibility. The Plaintiff moves for Judgment as a Matter of Law against Defendant Wingard in his personal capacity.

### A. Standard of Review

Although neither the Defendants nor the Plaintiff specified the basis for their Motions, this Court concludes that both should have been brought under Rule 12(c), as they were filed after the pleadings had closed.[2] Rule 12(c) provides:

> After the pleadings are closed but within such time as not to delay t he trial, a party may move for judgment on the pleadings. If, on a motion for judgement on the pleadings, matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .

FED.R.CIV.P. 12(c); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n. 1 (6th Cir.1988).[3]

As both Motions rely on matters outside the pleadings, including deposition testimony, they will be treated as motions for summary judgment under Rule 56. FED.R.CIV.P. 12(c). This Court, within its discretion, accepts the deposition testimony in reaching its decision on the parties' Motions. *Carney v. Experian Info. Solutions, Inc.*, 57 F.Supp.2d 496 (W.D.Tenn. 1999) (citing *Sage Int'l Ltd. v. Cadillac Gage Co.*, 556 F.Supp. 381, 384 (E.D.Mich. 1982)).

In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the non moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir.1994). Significantly, "[t]he filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991) (citing *John v. State of La. (Bd. of Tr. for State Colleges & Univ.)*, 757 F.2d 698, 705 (5th Cir.1985)).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad.*, 929 F.2d at 248. Summary judgment is therefore appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to

**2.** Pleadings are considered "closed" once the once a complaint and answer have been filed. FED.R.CIV.P. 7(a).

The Plaintiff filed his Motion seeking Judgment as a Matter of Law, possibly, although not explicitly, under Federal Rule of Civil Procedure 50(a). This type of Motion is proper only "during a trial by jury." FED. R. CIV. P. 50(a).

**3.** The Court determines that the Defendants' Motion will serve to delay the trial as it was filed four weeks prior to trial and more than three years after this case was originally brought by the Plaintiff. FED.R.CIV.P. 12(c). The Court, however, will not dismiss the Defendants' Motion solely on that basis.

the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The existence of a mere scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

## B. Prison Litigation Reform Act

■ The Defendants first argue in their Motion that this case should be dismissed as the Plaintiff did not exhaust his administrative remedies under the Prisoner Litigation Reform Act of 1995 ("PLRA"). The PLRA, as amended, provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).[4] The amended version of the PLRA, enacted on April 26, 1996, and is to be treated prospectively. *Wright v. Morris*, 111 F.3d 414, 423 (6th Cir.1997). In *Wyatt v. Leonard*, 193 F.3d 876 (6th Cir.1999), the Sixth Circuit addressed the standard by which to evaluate a prisoner's claim that arose prior to the amended version of the PLRA, but was filed after the date of its enactment. The *Wyatt* court found: "Even where a complaint is filed in federal court after the effective date of the 1996 Act, the exhaustion requirement does not apply when the inmate's ability to exhaust for the event that gave rise to the action expired before enactment of the 1996 Act." *Id.* at 879.

In this case, the Plaintiff's claim arose on March 19, 1996, his appeal was denied on March 28, 1998; and he had fifteen days to file his final appeal, the deadline for which was April 12, 1996.[5] The amended version of the PLRA was not passed until two weeks after the deadline for Mr. Williams's final appeal of the RIB decision. Pursuant to *Wyatt*, the exhaustion requirement does not apply here because the Plaintiff's ability to exhaust expired before the enactment of the amended version of the PLRA. The *Wyatt* court relied on the

4. In contrast, the pre-amendment version of the PLRA vests the Court with discretion in determining whether to require the litigants to exhaust their administrative remedies. That version provided:

[I]n any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate an in the interests of justice, continue such case for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

42 U.S.C. § 1997e(a)(1).

5. The Plaintiff filed a separate grievance pursuant to Ohio Administrative Code section 5120–9–31(E), on June 12, 1996. This appeal, however, is distinct from his section 5120–9–09 appeal of a Class II violation, as section 5120–9–31(C) provides: " The grievance procedure is not designed to act as an additional or substitute appeal process in connection with rules infraction board or institutional hearing officer proceedings. A complaint relating to a specific disciplinary decision will not be considered." OHIO ADMIN. CODE § 5120–9–31(C).

pre-amendment version of the PLRA, addressing the claims before it, and found the pre-amendment version controlling for cases in which the inmate's ability to exhaust expired before the enactment of the amended PLRA.

Under the pre-amendment version of PLRA, exhaustion was not mandated. In *Wright v. Morris*, the Sixth Circuit concluded:

> Before this year, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not, as a rule, required to exhaust administrative remedies before filing suit. Although 42 U.S.C. § 1997e allowed district courts to continue such cases for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available, exhaustion was only to be required if the court believed that such a requirement would be appropriate and in the interests of justice. 42 U.S.C. § 1997e(a)(1) (1995).

111 F.3d at 417.

This Court, accordingly, finds that exhaustion was not required before filing the case *sub judice*.

■ Although citing *Wright v. Morris*, the Defendants do not address the salient issue in their Motion: the prospective as compared to the retrospective application of the PLRA. In fact, the Defendants made their Motion without even referencing a single date, an oversight which is of utmost importance in this case since the amendment to the PLRA occurred at the approximate time that the Plaintiff allegedly was denied his due process rights. The Defendants instead argue, citing *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998), and Ohio Administrative Code section 5120–9–09 [6] that "[e]ach claim at each stage must parallel each and every claim in the federal complaint." Contrary to the

Defendants' assertion, *Brown v. Toombs* does not address this issue. Also, section 5120–9–09 does not require such a rigid, formalistic presentation of a prisoner's claim. OHIO ADMIN. CODE §' 5120–9–09. For example, an appeal of the RIB's decision to the managing officer does not require the presentation of parallel claims. OHIO ADMIN. CODE. § 5120–9–09(K). And, for appeals to the Director of the Department of Rehabilitation, the appeal may be denied if the "inmate has not complied with the procedural requirements" including that "[t]he issues were not raised in the appeal to the managing officer." OHIO ADMIN. CODE § 5120–9–09(M)(3). There is no requirement that the prisoner's claim "parallel each and every claim" in his administrative appeal as the Defendants argue. Most important, there is no requirement that "each claim at each stage must parallel each and every claim in the *federal complaint*." Neither the Administrative Code, nor the PLRA addresses the requirements for claims filed in federal court.

Here, in his appeal to the managing officer, filed on March 19, 1996, and decided on March 28, 1996, Mr. Williams stated:

> On 3/19/96 I was found guilty of a dirty uron [sic] by the R.I.B. I never took a drug test in which to be found guilty of. There is more than one Williams in this institution. Afer [sic] one takes a drug test there must be a signiture [sic] involved. I did not sign personaly [sic] for anything because I was not pressent. [sic] I do not do drugs and have not taken any drug test since being incarcerated. I do not wish to have any violation on my record. It would not be fair for me to except [sic] the consiquence [sic] of this violation if I had no involvement. Please investigate this situation. Thank you.

Mr. Williams raised the same issue in his original RIB hearing that was raised on

---

6.  Ohio Administrative Code section 5120–9–09 was repealed on July 18, 1997 and com-

bined with section 5120–9–07.

appeal: whether he was the "Williams" who took the drug test. Mr. Williams was not permitted to call either Allen Williams or Ms. Sharpe as a witness to support his case in the RIB proceeding. Even assuming, *arguendo,* that Defendants' interpretation of the Administrative Code is correct, Mr. Williams's claim, at the very least, arose from the same alleged infraction and the subsequent proceedings before the RIB.

The Defendants' Motion to Dismiss on the basis of failure to exhaust administrative remedies, which has been treated as one for summary judgment by this Court, is without merit.

### C. Allen Williams's Deposition Testimony

■ The second basis for the Defendants' Motion to Dismiss is that the Plaintiff's case is based on a factual impossibility. Allen Williams, the individual whose urine the Plaintiff claims was mistaken for the Plaintiff's, stated in his deposition that he did not smoke marijuana during the winter. Based on Allen Williams's testimony, the Defendants argue that Allen Williams could not have tested positive for marijuana because he did not smoke any during the winter and, therefore, the Plaintiff's claim fails as it contains a factual impossibility.

■ A "factual impossibility" is typically a criminal defense and is defined as "the situation in which the defendant is unable to accomplish what he intends because of some facts unknown to him." *United States v. Peete,* 919 F.2d 1168, 1176 (6th Cir.1990) (quoting *United States v. Goodpaster,* 769 F.2d 374, 380 n. 5 (6th Cir. 1985)). As a threshold matter, Allen Williams's own affidavit belies the Defendants' argument. In his affidavit, Allen Williams states:

I, Allen Williams, was called for a urine test and the results of that urine test came back positive for marijuana abuse. Instead of the individual in charge of administrating the drug test; Ms.

Sharp, writing a ticket on me, Allen Williams for a dirty urine, she wrote the ticket on another inmate with the same last name as I have. This inmate [sic] name is Kenneth Williams and his number is # 307–789 and he also lives in the same pod as I do.

The affidavit, by its own terms, establishes that the "dirty" urine was Allen Williams's, not the Plaintiff's. Accordingly, it is not factually impossible for the urine in question to be that of Allen Williams.

Although Allen Williams, in his deposition testimony, denies smoking marijuana in the winter, in his affidavit, he states that the urine test was improperly recorded as the Plaintiff's instead of his. At the least, this inconsistency creates a genuine issue of material fact underlying the Defendants' Motion to Dismiss, which has been treated by this Court as one for summary judgment. This alone makes summary judgment inappropriate.

Moreover, even accepting Allen Williams's deposition testimony as true, the result that Mr. Williams intended to achieve was to call Allen Williams as a witness to preserve his due process rights. Whether Allen Williams smoked marijuana in the winter of 1995 is irrelevant to the determination of whether he was properly excluded as a witness in the Plaintiff's RIB hearing. Of relevance is the fact that Plaintiff proffered an exculpatory witness who was not allowed to testify because the RIB predetermined that Allen Williams would not be a credible witness.

Since Allen Williams's own affidavit establishes that Allen Williams provided the urine sample in question, there is no factual impossibility that the urine at issue was someone's other that of the Plaintiff's. The second basis for the Defendants' Motion is also without merit. Defendants' Motion to Dismiss is, therefore, **DENIED.**

### D. Renewed Motion for Reconsideration

■ On November 20, 2000, the date of the final pretrial conference—two weeks

before trial—the Defendants filed a Renewed Motion for Reconsideration, citing an October 11, 2000 Sixth Circuit decision, *Huey v. Stine*, 230 F.3d 226 (6th Cir.2000). The Defendants argue that Mr. Williams, in fact, is claiming to be innocent of the charge that he smoked marijuana while incarcerated at the Madison Correctional Institute, and that he is challenging his RIB "conviction." Based on the holding in *Huey*, the Defendants conclude that the Plaintiff's claim therefore cannot be brought before this Court and should be dismissed without prejudice.

The Court finds that *Huey* is not relevant to the present case. The inmate-plaintiff in *Huey* received a misconduct ticket after allegedly assaulting a corrections officer in a failed attempt to obtain the officer's handcuff key. 230 F.3d at 226. After exhausting his administrative remedies, Huey filed a § 1983 action in federal court alleging that because he had not committed an assault on a corrections officer, his punishment for the offense was in violation of the Eighth Amendment's cruel and unusual punishment clause. In his demand for relief, Huey asked the court to expunge the disciplinary infraction from his record.

Relying on *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Sixth Circuit found that "the Heck/Edwards doctrine ... prevent[s] a prisoner found guilty in a prison disciplinary hearing from using § 1983 to collaterally attack the hearing's validity." *Id.* at 228. Because Huey was asking the court to expunge his prison record, the court would have to, in essence, "unwind the judgment of the state agency," or "annul the judgment of the Michigan Department of Corrections." *Id.* at 230. The Sixth Circuit concluded that this result was not permitted by *Heck* and affirmed dismissal without prejudice. *Id.* at 230.

Here, in contrast to *Huey*, Mr. Williams is not attacking the "judgment of the state agency," but the process that was used in reaching that judgment. Mr. Williams claims that he was not permitted to call two witnesses at his hearing, Allen Williams and Ms. Sharpe, but does not claim that he is innocent of the charge. And, in his demand for relief, Mr. Williams asks for monetary damages and injunctive relief, but does not ask this Court invalidate the RIB's decision as the plaintiff in *Huey* did. The Court, therefore, finds that *Huey* is not applicable to the present case and **DENIES** the Defendants' Renewed Motion for Reconsideration.

### E. Sanctions under Rule 11(c)

The procedural history of this case is extensive. This suit was originally filed in February of 1997 by the Plaintiff, proceeding *pro se*. The Plaintiff moved for Summary Judgment on May 19, 1997; that Motion was denied on August 26, 1997. Defendants were given until August 31, 1997 to file their dispositive motion. Following an extension, on September 15, 1997, the Defendants filed their Motion for Summary Judgment, arguing that the Plaintiff's due process rights were not violated. On September 30, 1998, this Court denied the Motion for Summary Judgment. On October 6, 1998 Defendants moved for reconsideration of this decision, which this Court denied on September 30, 1999. On May 15, 2000, the Defendants filed for Leave to File a Second Dispositive Motion; they filed their Second Motion for Summary Judgment on June 8, 2000. In their Second Motion for Summary Judgment, the Defendants argued that they were entitled to qualified immunity as the Plaintiff's right to call witnesses was not clearly established. On September 11, 2000, this Court denied the Defendants' Motion for Leave to File a Second Dispositive Motion, denied the Defendants' Second Motion for Summary Judgement and denied the Defendants' Motion to Stay Discovery.

Now, almost four years after the original Complaint was filed, and three years since the dispositive motion deadline of

September 15, 1997, the Defendants, on November 6, 2000, filed the present Motion to Dismiss.[7] The Defendants' Motion comes before this Court four weeks before trial, and more than three years after the dispositive motion deadline. As already determined, the Defendants have absolutely no basis for their Motion.

Federal Rule of Civil Procedure 11 requires that when a motion is submitted, the party represents to the court that:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; ...
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; ...

FED.R.CIV.P. 11(b)(1)-(3).

The Court may initiate a show cause hearing under Federal Rule of Civil Procedure 11(c)(1)(B) for a party's failure to comply with Rule 11(b)(1)-(3). Rule 11(c)(1)(B) provides: "On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto." FED.R.CIV.P. 11(c)(1)(B).

Under Rule 11(c)(1)(B), the Court finds that the conduct that appears to be in violation of Rule 11(b)(1)-(3) is the Defendants' filing of their Motion to Dismiss. The Court bases its conclusion on the following reasons: first, the Motion was filed almost four years after this suit was filed, and more than three years after the close of the dispositive motion deadline; second, this was the third such dispositive motion filed by the Defendants-the second was also well past the dispositive motion deadline; third, the Motion is completely without merit.

This Court is mindful of the fact that a dispositive motion filed untimely is permitted under limited circumstances.[8] Under Federal Rule of Civil Procedure 16(b), a district court is permitted to modify the dispositive motion schedule only upon a showing of "good cause." FED.R.CIV.P. 16(b). The Defendants have not made such a showing. To the contrary, the information contained in the Defendants' Motion to Dismiss was in their possession before this suit was even filed. The Defendants, as officials of the prison in which the Plaintiff is housed, had access to the records showing whether Mr. Williams exhausted his administrative remedies, and could have presented this Motion before filing their Answer. At the very least, the Defendants could have presented this argument in their first Motion for Summary Judgment, filed in 1997. The Defendants,

---

7. Since the Defendants' Motion considers matters outside of the pleadings, the Court has considered it a motion for summary judgment. Realistically, the Defendants have now filed three motions for summary judgment in this matter, two well past the dispositive motion deadline.

8. For example, the Plaintiff's Motion for Judgment as a Matter of Law was filed on the same date as the Defendants' Motion to Dismiss. In contrast to the Defendants, the Plaintiff, for the first time, filed a dispositive motion with the assistance of counsel. Counsel was appointed on June 26, 2000.

Also, the Defendants filed a Motion to Stay Discovery on July 27, 2000. It was only through a telephone status conference and a subsequent Order filed by the Court on August 21, 2000, that the Plaintiff was permitted to conduct discovery. On October 4, 2000, because of the Defendants' Motion for Stay, the Plaintiff requested a Brief Extension of Case Schedule so that he could conduct discovery in the following two weeks. The Plaintiff's Motion for Judgment as a Matter of Law followed soon thereafter.

therefore, have shown anything but "good cause."

Defendants' Motion is totally without merit. The first basis for the Defendants' Motion, that Mr. Williams failed to exhaust his administrative remedies before filing suit, ignores the change in the language of the PLRA. The Defendants, in their Motion, did not provide a single date of the underlying events that would indicate that this Court should follow the amended version of the PLRA because it was already in force at the time of the events giving rise to this suit. The Defendants did not even present a good faith argument on this point. The Defendants also failed to cite or distinguish *Wyatt v. Leonard*, 193 F.3d 876 (6th Cir.1999), a controlling decision in this Circuit that discusses which version of the PLRA should be followed in this case, and holds contrary to the Defendants' position.

As for the second basis for the Defendants' Motion, factual impossibility, Defendants offer a complete misunderstanding and misstatement of the law and ignores the affidavit of Allen Williams that had been filed in this case. Pursuant to Rule 11(b)(2) and (3), the Defendants had an obligation to research the facts and the law before presenting the "factual impossibility" argument. It is apparent that Defendants ignored Allen Williams's affidavit as well as the law governing "factual impossibility."

Based on these reasons, the Court finds at this time that there appears to be a violation of Rule 11(b)(1)-(3), and **ORDERS** the Defendants' counsel to appear for a show cause hearing on December 1, 2000, at 10:30 a.m. to explain how their actions were not in violation of Rule 11(b)(1)-(3).

### F. Plaintiff's Motion to Rule as a Matter of Law

The Plaintiff argues that this Court should rule that he has established as a matter of law that Defendant Wingard is liable in his personal capacity, and that he violated the Plaintiff's due process rights. The Defendants respond that for an alleged civil rights violation such as the present one, the Plaintiff must demonstrate the Defendants' subjective intent, which is ultimately a question of fact for the jury.

■■■ To bring a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a person acting under color of state law deprived him of his rights guaranteed under the United States Constitution. 42 U.S.C. § 1983; *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). Although respondeat superior cannot be the basis of liability, a superior may be held liable if, "[a]t a minimum, a § 1983 plaintiff ... show[s] that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir.1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984)). The official, to be held personally liable, must have "caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

The Defendants rely on *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), for their argument that a § 1983 claim requires proof of subjective intent. The plaintiff in *Daniels* sought to recover for the injuries he sustained when he slipped on a pillow that was negligently left on the stairs by a jail deputy. *Id.* at 328, 106 S.Ct. 662. In *Daniels*, the Court held: "[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.*[9] The Court commented in a

---

9. Stated another way, the Court concluded that a § 1983 claim "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right .... and depending on

footnote that: " [T]his case affords us no occasion to consider whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." *Id.* at 667 n. 3.[10]

■ The Sixth Circuit addressed the issue left open by the *Daniels* decision: what is the state-of-mind required for a due process claim brought under § 1983? The court found that to state a claim based on the deprivation of procedural due process, the "conduct must be grossly negligent, deliberately indifferent, or intentional." *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir.1996).[11] If the action taken by the prison official was by mistake or inadvertence, it is not "intentional" conduct. *Id.* at 1351. The proper inquiry, however, is not whether there was "personal animosity, ulterior motives, unspoken reasons, or face-to-face contact" as the prison official's motivation is irrelevant. *Id.* at 1352. The *Howard* court concluded: "If the conduct resulting in the deprivation is intentional or deliberately indifferent, a constitutional violation results even if the decision to deprive was made with the best of motives." *Id.* It is apparent from *Howard* that intent in the context of a procedural due process claim is subject to an objective, rather than a subjective, determination. *See id.* at 1351–53.

■ The Defendants' argument is without merit. Subjective intent is not an element of a claim of deprivation of procedural due process under the Fourteenth Amendment. Accordingly, the Court will

focus its analysis on the required elements of a § 1983 claim: state action, violation of a constitutionally protected right and objective intent. *Russo,* 953 F.2d at 1042.

First, the prison officials' actions in denying Mr. Williams's right to call witnesses were clearly actions taken by prison officials, who are state actors. Moreover, the third element, objective intent, is satisfied because, viewing the facts in a light most favorable to the non-movant, Defendant Wingard intentionally disallowed Allen Williams's testimony. The only remaining issue, therefore, is whether there was a violation of a constitutionally protected right.

In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, the Court found that an inmate facing disciplinary proceedings does not have an unqualified right to call witnesses. 418 U.S. at 566, 94 S.Ct. 2963. This right may be limited, for example, if allowing the inmate to call witnesses would be "unduly hazardous to institutional safety and correctional goals." *Id.* at 566, 94 S.Ct. 2963. The *Wolff* Court, although not prescribing the procedure, stated: "it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Id.*

Expounding on *Wolff,* in *Ponte v. Real,* 471 U.S. 491, 496, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985), the Supreme Court found that the disciplinary board need not "state in writing at the time of the hearing its reason for refusing to call a witness."

the right, merely negligent conduct may not be enough to state a claim" *Id.*

10. Interestingly, the Court in *Daniels* commented on *Wolff v. McDonnell,* the case upon which Mr. Williams's claim is based, and found that: "We think the relevant action of the prison officials in that situation is their deliberate decision to deprive the inmate of good-time credit, not their hypothetically negligent failure to accord him the procedural protections of the Due Process Clause." *Id.* at 666.

11. The court in *Howard* defined each term. "Intentional" acts focus on the conduct of the actor and involve deliberate and knowing conduct. *Id.* at 1351. "Deliberate indifference" can be found where the prison official act with reckless disregard. The conduct lies between negligence and purposefulness. *Id.* at 1351–52. The court concluded that, in a post-deprivation context, deliberate indifference is an objective standard which addresses "a prison official's failure to act when he has actual or constructive knowledge of an obvious prison rule violation." *Id.* at 1352.

The Court held that prison officials may provide the reason for denying a witness either in the "administrative record" or through "testimony in court." *Id.* at 497, 105 S.Ct. 2192. The explanation provided, however, will be guaranteed to survive a due process challenge only if "the reasons are logically related to preventing undue hazards to 'institutional safety or correctional goals....'" *Id.*

▮ The Court also has before it a portion of the Prison's Inmate Disciplinary Manual ("Manual"), which states that witness requests may be denied if they are irrelevant, if the witnesses are unavailable, if the witness would be repetitive, or if there are security considerations. Defendant Wingard highlighted this standard when he testified that prisoners are not permitted to call witnesses if "any testimony that individual would give would be irrelevant to the particular case." Defendant Wingard interpreted this right as a right to call a witness, but not a right to have this request granted. RIB official Lieutenant Fisher testified that he would deny a witness if he had "reviewed the ticket" and saw that "the inmate is wanting a witness to testify, what I already know is before me, then I may deny that witness."

The administrative record in this case does not explicitly provide the reason(s) Mr. Williams was not permitted to call Allen Williams or Ms. Sharpe as witnesses. The Defendants' filings suggest multiple explanations for the denial of Mr. Williams's request for witnesses. In their Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, filed on September 29, 1997, the Defendants argued: "there is no indication that the result of the hearing would have been different had Allen Williams testified." And, in their Response to Plaintiff's Objections to Report and Recommendation, filed on December 3, 1997, the Defendants stated: "it is not likely that the RIB would have found [Allen Williams] a credible witness." The record also shows that Allen Williams could have been precluded as a witness for reasons that offend *Wolff* and *Ponte,* as neither Defendant Wingard nor Lieutenant Fisher explicitly provided reasons for his exclusion that comport with the standards of *Wolff* or *Ponte.* The record clearly fails to show that Allen Williams was refused because of undue hazards to "institutional safety" or "correctional goals."

The Court, therefore, finds, viewing the facts in the light most favorable to nonmovant Defendant Wingard, that there exists a genuine issue of material fact on the basis for disallowing Allen Williams as a witness. The Defendants' actions in denying Mr. Williams his witnesses may or may not be seen as arbitrary. Based on the present record, it appears that it was Defendant Wingard's policy that the RIB was following when it denied Mr. Williams's request for witnesses. It also is reflected in the present record that Allen Williams was disallowed because prison officials believed that he would not be credible, or because his testimony would not change the outcome of the hearing. If these appearances are borne out at trial, Defendant Wingard could be held liable in his personal capacity. Viewing the facts in the light most favorable to the Defendants, at this time the record is not *entirely* clear as to why, in fact, Allen Williams was disallowed as a witness before the RIB. The Supreme Court decision of *Ponte* permits Defendant Wingard to explain at trial his reason(s) for denying Mr. Williams's requested witnesses. 471 U.S. at 497, 105 S.Ct. 2192.

The Court will hold its judgment in abeyance pending the development of the record during trial on this matter. The Court therefore **DENIES** the Plaintiff's Motion to Rule as a Matter of Law, which the Court has viewed a Motion for Summary Judgment.

### G. Injunctive Relief

The Plaintiff next requests that this Court issue an injunction against Defen-

dant Wingard in his official capacity, and against the Madison Correctional Institute, forbidding them from continuing this unconstitutional policy regarding witnesses in RIB hearings. The Plaintiff contends that an injunction against Defendant Wingard would be futile as he is no longer the Warden at the Madison Correctional Institute. To establish his right to injunctive relief, the Plaintiff argues that he just needs to show that a policy or custom of the Institute played a part in his constitutional deprivation. *Kentucky v. Graham*, 473 U.S. at 166, 105 S.Ct. 3099.

The Defendants respond that the PLRA limits such relief as the Act requires the "immediate termination of any prospective relief" unless such relief is necessary to correct "current and ongoing violation" of an established federal right. 18 U.S.C. § 3626(b)(2)-(3). The Defendants argue that the Plaintiff has not established that a violation of his procedural due process rights continues.

The PLRA section cited by the Defendants is not on-point, as it provides for the procedures for the "termination of relief." Since no relief has been ordered, there is none to terminate at this time. 18 U.S.C. § 3626(b). The relevant section of the PLRA provides:

(a) Requirements for relief.

(1) Prospective relief.

(A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

(B) The court shall not order any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless-

(i) Federal law requires such relief to be ordered in violation of State or local law;

(ii) the relief is necessary to correct the violation of a Federal right; and

(iii) no other relief will correct the violation of the Federal right.

(C) Nothing in this section shall be construed to authorize the courts, in exercising their remedial powers, to order the construction of prisons or the raising of taxes, or to repeal or detract from otherwise applicable limitations on the remedial powers of the courts.

18 U.S.C. § 3626(a)(1).

As with the Plaintiff's Motion for Judgment as a Matter of Law, the Plaintiff's Motion for Injunctive Relief is **DENIED** at this time, pending development of the record before the Court. If, following trial, it is determined that injunctive relief is necessary, this Court will conduct an additional hearing to explore the requirements outlined by 18 U.S.C. § 3626(a)(1)(A), including: what would constitute "narrowly drawn" relief, what would be the "least intrusive means," and what would be the "adverse impact on public safety." If necessary, the Court will at that time have the Defendants "come forward with a plan for the implementation of a new prison policy regarding requests for witnesses." *Whitlock v. Johnson*, 153 F.3d 380, 389 (7th Cir.1998).

### IV. CONCLUSION

Based on the foregoing, this Court **DENIES** the Defendants' Motion to Dismiss and their Renewed Motion for Reconsideration, and **ORDERS** that the Defendants' counsel appear on December 1, 2000, at 10:30 a.m. to show cause for why they should not be held in violation of Rule 11

for filing the Motion to Dismiss on November 6, 2000. The Court **DENIES** the Plaintiff's Motion to Rule as a Matter of Law, and for Injunctive relief, pending the development of the record before the Court.

**IT IS SO ORDERED.**