RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0363P (6th Cir.)
File Name: 00a0363p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JOSEPH T. HUEY,
          *Plaintiff-Appellant,*

          *v.*

DANIEL STINE, Correctional
Officer, Ionia Maximum
Correctional Facility,
          *Defendant-Appellee.*

No. 99-1848

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 98-00450—Gordon J. Quist, District Judge.

Submitted: August 11, 2000

Decided and Filed: October 11, 2000

Before: NELSON, SILER, and BATCHELDER, Circuit
Judges.

———————————

**COUNSEL**

**ON BRIEF:** A. Peter Govorchin, ASSISTANT ATTORNEY
GENERAL, CORRECTIONS DIVISION, Lansing,
Michigan, for Appellee. Joseph T. Huey, Ionia, Michigan,
pro se.

1

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge.    Joseph T. Huey, a prisoner in the Michigan Department of Corrections, appeals from a district court judgment dismissing his 42 U.S.C. § 1983 claim as barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).  For the reasons set forth below, we affirm the judgment of the district court.

**I**

On February 18, 1998, Joseph T. Huey, an inmate at the Ionia Maximum Correctional Facility, received a major misconduct ticket.  The ticket alleged that Huey had assaulted corrections officer Daniel Stine in an attempt to gain control of a handcuff key.  The matter was set for an administrative hearing on March 6, 1998.

At the hearing, Huey claimed that officer Stine had in fact assaulted him.  According to Huey, he and Stine got into an argument as Stine was escorting him from the shower to his cell.  The matter escalated when Huey was caught between the cell door and the door frame as he attempted to enter the cell.  Once inside the cell, Huey moved his hands to the door's food slot so that Stine could remove his handcuffs.  Stine allegedly grabbed Huey's right hand, pulled it through the slot, and began twisting Huey's arm, saying to another officer present at the scene, "I'll bend his fingers back.  Let's see if he can take that."  When other officers approached the cell, Stine released him.  Stine then filed a false misconduct report.  Huey maintains that as a result of the incident he suffered abrasions that produced scarring, and restricted movement in his wrist for four to six days.

The hearing officer did not credit Huey's account.  The hearing officer noted that had Stine attempted to break Huey's arm, as Huey claimed, Stine probably would have succeeded.  The hearing officer further remarked that a medical report

made after the incident was inconsistent with Huey's story. The report showed that the minor abrasions on his arm were consistent with its having been pulled back and forth through the food slot; the hearing officer concluded that this was the likely outcome of Huey's attempting to gain control of the handcuff key. Accordingly, the hearing officer found Huey guilty of assault and battery. Huey was sentenced to thirty days of detention and thirty days' loss of privileges.

Huey unsuccessfully moved for rehearing on the matter. He also initiated a three-step grievance process disputing the factual basis of the major misconduct ticket. Huey's grievance was denied at the final stage of the process on April 16, 1998. On June 11, 1998, Huey filed in the district court a 42 U.S.C. § 1983 action alleging that, because he had not assaulted officer Stine, Stine's actions were cruel and unusual punishment in violation of the Eighth Amendment. The complaint demanded $20,000 in compensatory damages, $12,000 in punitive damages, and expungement of the disciplinary infraction from his prison record. Huey subsequently amended the complaint to omit the demand for an order of expunction. Stine moved for summary judgment, and the district court dismissed Huey's claim as barred by *Heck v. Humphrey*. Huey timely appeals pro se.

## II

A decision by a district court to dismiss without prejudice will not be disturbed except for an abuse of discretion. *Craighead v. E.F. Hutton, Inc.*, 899 F.2d 485, 495 (6th Cir. 1990). A court will find an abuse of discretion where it has a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Balani v. INS*, 669 F.2d 1157, 1160 (6th Cir. 1982) (citations omitted). A court also abuses its discretion where it "improperly applies the law or uses an erroneous legal standard." *Gaston Drugs, Inc. v. Metropolitan Life Ins. Co.*, 823 F.2d 984, 988 (6th Cir. 1987) (quoting *Christian Schmidt Brewing Co. v. G.*

*Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir.), *cert. dismissed*, 469 U.S. 1200 (1985)).

### A

In *Heck v. Humphrey*, the Supreme Court held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck*, 512 U.S. 477, 486-87 (1994). This "favorable termination" requirement was extended to prisoner allegations of due process violations in prison discipline hearings resulting in deprivation of good-time credits in *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). This court has, in unpublished opinions, applied the *Heck/Edwards* doctrine generally to prevent a prisoner found guilty in a prison disciplinary hearing from using § 1983 to collaterally attack the hearing's validity. *See, e.g., Metcalf v. Vieta*, No. 97-1691, 1998 WL 476254 (6th Cir. August 3, 1998); *Foster-Bey v. Duncan*, No. 97-1617, 1998 WL 124002 (6th Cir. March 13, 1998).

Huey contends that since he has long since served his thirty days' detention, *Heck* should not be interposed to bar his claim. The thrust of this argument seems to be that application of the *Heck* doctrine would deprive Huey of a federal forum for his Eighth Amendment claim. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (stating that pro se pleadings are to be construed liberally). Because he is no longer "in custody" for his disciplinary infraction, Huey cannot seek a writ of habeas corpus challenging the legality of his detention. *See Carafas v. LaVallee,* 391 U.S. 234, 238

### III

For the foregoing reasons, the judgment of the district court is AFFIRMED.

*e.g., Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3d Cir. 1997). This court's unpublished pronouncements on the applicability of the "favorable termination" requirement to Eighth Amendment claims have taken some turns. In *Bailey v. McCoy*, we noted that "we have never applied *Edwards* to an Eighth Amendment claim," *Bailey*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999), only to apply that case to an Eighth Amendment claim that a corrections officer had issued a false misconduct report in *Riley* a week later. *See Riley*, 1999 WL 801560, at *5-6. But in another false misconduct report case, *Nelson v. Sharp*, we held that *Heck*/*Edwards* should not bar the claim. There the corrections officer allegedly slammed a food slot door on the plaintiff's hand and leaned on it before issuing the false report. "[I]t is not beyond the realm of possibility that Sharp can prove that Nelson violated his Eighth Amendment rights by slamming the food slot door on his hand in such a manner as to inflict unnecessary pain in a wanton manner, not justified by prison necessity or the degree of violation," we said. *Nelson*, No. 96-2149, 1999 WL 520751, at *2 (6th Cir. July 14, 1999).

We think the rule that can be taken from these cases is that *Heck* generally does not bar Eighth Amendment claims, but if the claim is founded solely on an allegation that a corrections officer falsified a misconduct report, then *Heck* applies. Such is the case here. Huey does not claim that Stine's actions were an excessive response to his attempt to gain control of the handcuff key (in contrast to *Nelson*, where the basis of the plaintiff's claim is unclear). Rather, Huey claims that Stine's arm-twisting was cruel and unusual punishment because Huey had done nothing wrong and he therefore should not have been punished at all. Granting relief on Huey's complaint would require that we annul the judgment of the Michigan Department of Corrections. *Heck* forbids that result.

(1968) (stating that "[t]he federal habeas corpus statute requires that the applicant must be 'in custody' when the application for habeas corpus is filed."); *see also Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal."). And because he cannot obtain a favorable resolution of his disciplinary sanction via habeas, his § 1983 claim is non-cognizable. *See Schilling v. White*, 58 F.3d 1081, 1087 (6th Cir. 1995) ("Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus."). Thus, the doors of the federal courts are shut against Huey.

This argument is not entirely without force. In *Spencer v. Kemna*, 523 U.S. 1 (1998), the Supreme Court considered whether the expiration of a habeas petitioner's prison sentence mooted his claim that procedures used to revoke his parole violated due process. The Court held that the habeas petition was moot because, once the petitioner's sentence had terminated, the petition no longer presented a case or controversy since petitioner was not able to show continuing "collateral consequences" of the parole revocation. *See Spencer*, 523 U.S. at 8. The petitioner argued, among numerous other contentions, that his habeas petition could not be moot because, if it were, he would be barred from pursuing a § 1983 action, since *Heck* requires that in order to pursue a § 1983 action, he must establish that his parole had not been validly revoked. Justice Scalia, writing for the Court, viewed petitioner's argument as "a great non-sequitur, unless one believes (as we do not) that a § 1983 action for damages must always and everywhere be available". *Id.* at 17. Four concurring Justices and the dissent disagreed. Justice Souter wrote:

> The better view . . . is that a former prisoner, no longer "in custody" may bring a § 1983 action establishing the

unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy. Thus, the answer to Spencer's argument that his habeas claim cannot be moot because *Heck* bars him from relief under § 1983 is that *Heck* has no such effect.

*Id.* at 21 (Souter, J., concurring); *see also id.* at 25 n.8 (Stevens, J., dissenting) (agreeing with Justice Souter's understanding of the law). Perhaps predictably, the reactions from the Courts of Appeals to *Spencer* concurrence/dissent/dictum has not been uniform. *Compare Jenkins v. Haubert*, 179 F.3d 19, 27 (2d Cir. 1999) (relying partially on the tally of votes in *Spencer* to conclude that "a § 1983 suit by a prisoner . . . challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of the prisoner's confinement is not barred by *Heck* and *Edwards*") *and DeWalt v. Carter*, No. 98-2415, 2000 WL 1137385 (7th Cir. Aug. 11, 2000) (following *Jenkins*) *with Figueroa v. Rivera*, 147 F.3d 77, 81 n.3 (1st Cir. 1998) (applying *Heck* to bar a § 1983 claim brought by the family of a prisoner who could not challenge the fact of his confinement through habeas because he had died while in prison, despite "dicta from concurring and dissenting opinions" in *Spencer*).

Our own, unpublished, practice has not wavered in the wake of *Spencer*. In *Riley v. Kurtz*, as in this case, a state prisoner brought a § 1983 action alleging that a corrections officer had violated his Eighth amendment rights by filing a false misconduct report. We held the claim barred by the "favorable termination" requirement, saying of *Spencer*:

Riley wishes to extend this reasoning from situations where habeas corpus is procedurally barred to situations, as in the present case, where the § 1983 plaintiff met with an unsuccessful outcome in a prison disciplinary hearing but has served his full punishment for the infraction. He argues that the concurring [J]ustices'

statements should be read broadly to mean that there is never a "successful outcome" prerequisite to a prisoner bringing a § 1983 claim.

. . .

We decline to adopt Riley's argument. Even if he has correctly inferred the direction that the Supreme Court will take in the years to come, the rule he advocates represents a major extension of what the five [J]ustices have actually stated in their various concurring opinions. Unless and until the Supreme Court adopts the position Riley advocates, we will continue to follow *Edwards* and the reasoning of the unpublished Sixth Circuit cases cited above.

*Riley*, No. 98-1077, 1999 WL 801560, at *5-6 (6th Cir. Sept. 28, 1999).

Today we reaffirm the holding of *Riley* as the law of this Circuit. In order to grant the plaintiff in this case the relief that he seeks, we would have to unwind the judgment of the state agency. "This is precisely the result that we have repeatedly held to be impermissible based on our interpretation of *Edwards*." *Id.* at *6. Although *Spencer* may cast doubt upon the universality of the "favorable termination" requirement, we will continue to follow the Supreme Court's directly applicable precedent and "leave to the Court 'the prerogative of overruling its own decisions.' " *Figueroa*, 147 F.3d at 81 n.3 (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)). Accordingly, we hold that *Heck* is not made inapplicable to Huey's claim by the unavailability of habeas relief.

**B**

Huey next argues that *Heck* should not bar his suit because his claim sounds under the Eighth Amendment. In general, the federal courts hold that Eighth Amendment claims do not run afoul of *Heck* because the question of the degree of force used by a police or corrections officer is analytically distinct from the question whether the plaintiff violated the law. *See,*