IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 22, 2002

## TONY MAKOKA v. HOWARD COOK, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 00-3870-III     Ellen Hobbs Lyle, Chancellor**

_____

**No. M2001-01013-COA-R3-CV - Filed December 5, 2002**

_____

An inmate filed a pleading in the chancery court complaining his parole hearing had been delayed because the Department of Correction misapplied a statute and misclassified him as close custody by improperly convicting him of disciplinary infractions and/or assigning too many custody points for a federal immigration detainer warrant. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., joined. WILLIAM C. KOCH, JR., J., filed a concurring opinion.

Tony Makoka, Oakdale, Louisiana, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Stephanie R. Reevers, Associate Deputy Attorney General, for the appellee, Howard Cook, et al.

**OPINION**

This case began with the filing by Mr. Makoka of a "parole certification complaint." In that pleading Mr. Makoka alleged that in July 1998 he met with the Board of Paroles and his next hearing was set for July 2000. He was not granted that hearing because, he alleges, he had been placed in "close custody" classification due to either disciplinary proceedings in August and September of 1999 or to a miscalculation of his custody "points" resulting from an immigration detainer or both. He also claims Department officials incorrectly interpreted the statute regarding their certification of parole eligibility. In addition to the delay in his parole consideration, he claims that the classification into the close custody level removed him from his job and resulted in his transfer from the minimum security facility in which he had been housed.

Mr. Makoka "emphatically" stated in his complaint that he was not suing because of a denial of parole and was not arguing or claiming such denial as a basis for relief. While this is technically

accurate, because he was not denied parole in July of 2000, his filings make clear that his primary complaint is that he was denied the opportunity for parole because he was not certified by the Department to the Board of Paroles and did not have a parole hearing in July of 2000.

His requests for relief demonstrate this. Among other things, he asked that the Department be required to correct the erroneous assignment of a misdemeanor detainer as a felony, then correct his classification score and properly classify him, expunge his record that he was classified as close custody, and certify him for a parole grant hearing. He also requested that the Department remove and expunge the disciplinary convictions and immediately restore lost sentence credits and earnings from his job he lost as a result of the disciplinary infractions.

By the time Mr. Makoka filed his notice of appeal, his address had changed to a federal detention center in Louisiana, and that is the address appearing on filings in this court. In their brief herein, the defendants stated Mr. Makoka had "apparently" met the parole board and been released from the custody of the Department. In his reply brief, Mr. Makoka confirms the situation by acknowledging that he has been released from custody of the Department and is on parole. Thus, it is the delay in his appearance before the parole board, which Mr. Makoka describes as from July 2000 to April 2001, that is the crux of his complaint.

Prisoners do not have an absolute right to be released from confinement prior to the expiration of their sentence. *Graham v. State*, 202 Tenn. 423, 426, 304 S.W.2d 622, 623-24 (1957); *Robinson v. Traughber*, 13 S.W.3d 361, 364 (Tenn. Ct. App. 1999); *Tarpley v. Traughber*, 944 S.W.2d 394, 395 (Tenn. Ct. App. 1996). Thus, parole is a privilege and not a right. Tenn. Code Ann. §§ 40-28-117(a), 40-35-503(b); *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 482 (Tenn. 1997). Whether a prisoner should be granted parole is a decision entrusted to the Board, not the courts. *State ex. rel. Ivey v. Meadows*, 216 Tenn. 678, 685, 393 S.W.2d 744, 747 (1965); *Rucker v. State*, 556 S.W.2d 774, 776 (Tenn. Crim. App. 1977).

Because no prisoner has a constitutional or inherent right to be conditionally released before the expiration of a valid sentence, *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 7-8, 99 S. Ct. 2100, 2104 (1979), a prisoner has no constitutionally-protected liberty interest in parole. Tenn. Code Ann. § 40-35-503(b); *Wright v. Trammell*, 810 F.2d 589, 591 (6th Cir. 1987); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 (Tenn. Ct. App. 1995). Without such an interest, due process does not attach. Consequently, any claim by Mr. Makoka that the delay in his parole hearing was a denial of due process must fail.

According to Mr. Makoka the delay was caused by misclassification and by a misinterpretation of Tenn. Code Ann. § 40-35-501(*l*)(1), which provides:

> The department of correction shall not certify an inmate for a parole grant hearing, other than an initial grant hearing, if, at the time the department of correction would have otherwise certified the inmate as eligible, the inmate is classified as close

custody. Such decertification shall continue for the duration of such classification, and for a period of one (1) year thereafter.

As we interpret Mr. Makoka's argument, he would have been certified to the parole board, according to the Department's customary practice, any time within ninety (90) days of the hearing scheduled for July 2000. He was placed in close custody classification as a result of incidents in August and September of 1999. In his brief, he states that he was reclassified from close to medium custody on January 12, 2000. He argues that because he was no longer classified as close custody at the time the Department would have ordinarily certified him, the Department misinterpreted or violated the statute.

We cannot agree. Mr. Makoka's argument ignores the second sentence of the provision, which clearly extends the period of ineligibility for certification for parole consideration for one year beyond the end of the close custody classification. Thus, Mr. Makoka would not have become eligible for a parole hearing until after January 12, 2001.

Mr. Makoka also argues that, even if the Department applied Tenn. Code Ann. § 40-35-501(*l*) correctly, he should not have been classified close custody in the first place. Classification of prisoners is a matter largely within the discretion of prison officials. A prisoner has no right to any particular security classification level. *Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S. Ct. 1741, 1745 (1983); *Montayne v. Haymes*, 427 U.S. 236, 242-43, 96 S. Ct. 2543, 2547 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). Thus, prisoners generally do not have a due process liberty interest in their placement and classification while incarcerated. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 279 n.9 (1976).

State statutes give the Department wide discretion in its classification of prisoners. Tenn. Code Ann. § 41-21-202; *McCloud v. Bradley*, 724 S.W.2d 363, 366 (Tenn. Ct. App. 1986). "A state prison inmate has no right to a particular classification under state law, and prison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status." *Jaami v. Conley*, 958 S.W.2d 123, 125 (1997) (quoting 60 AM. JUR. 2D *Penal and Correctional Institutions* § 34 (1979)). Consequently, Mr. Makoka has failed to state a claim for deprivation of due process.

Mr. Makoka alleges two reasons why he should not have been on close custody. His first claim is that the calculation of his "points" resulting in his reclassification was incorrect. He explains the relationship of the disciplinary convictions and the basis for his dissatisfaction with the calculation:

Prior to coming to MTRC plaintiff had a perfect record, his points were -4. The written warning [from one disciplinary conviction] was a class "C" which gave him 3 points, the solicitation of staff charge was a class "A" resulting in 7 points, and then he was given 4 more points for receiving two write-ups within a month. Finally, he

also received 5 points for an immigration misdemeanor detainer that mysteriously surfaced.

His problem with the points awarded for the detainer warrant is that the Department assessed 5 points as if it were a felony, instead of the 3 points assignable for a misdemeanor which he asserts is the usual policy. He alleged he was informed by the director of classification that all immigration detainers are considered serious and are treated as felonies. The result of these extra two points, according to Mr. Makoka, was to place him in the close custody range instead of in the medium range. His primary complaint is that he was given too many points for a federal detainer warrant. We find no authority for this proposition. Statute and case law clearly give the Department discretion to evaluate the security classification of each prisoner. Taking as true Mr. Makoka's allegations, his complaint comes down to the fact that Department officials treated a federal or immigration detainer seriously. We find no basis in the law for a claim against the Department or the individual defendants based on that alleged conduct.

Secondly, Mr. Makoka claimed that the disciplinary proceedings were the result of retaliation by a correctional officer because Mr. Makoka had previously filed a grievance against her. His complaint argues the merits of his disciplinary convictions, as does his brief on appeal. He also claims the convictions were obtained in violation of due process.

In order to argue that he was improperly classified because of his disciplinary convictions, Mr. Makoka must challenge the validity of those proceedings. As the trial court found, the proper method for challenging a prison disciplinary board decision is by common law *writ of certiorari*. *Rhoden v. State Dep't of Corr.*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998); *Bishop v. Conley*, 894 S.W.2d 294, 296 (Tenn. Crim. App. 1994). Such actions must be brought within sixty (60) days of the decision complained of. Tenn. Code Ann. § 27-9-102. This time period is jurisdictional. *Thandiwe v. Traughber*, 909 S.W.2d 802, 804 (Tenn. Ct. App. 1994). Mr. Makoka did not initiate this lawsuit until well over a year after the disciplinary board decisions which contributed to his close custody classification. Consequently, we affirm the trial court's dismissal of claims relating to the disciplinary proceedings.

In his brief, Mr. Makoka argues that the trial court was wrong in this regard because he was not seeking review of the disciplinary proceedings and decisions, but was instead suing defendants, who he says did not administer discipline against him, for conspiring against him, presumably to delay his parole hearing. His brief states:

The appellant makes a clear distinction between the disciplinaries and the classification matters and as a matter of emphasis, states that he did not seek disciplinary review with the Chancery Court, but sought review of the state statute and its employment against the appellant which resulted in damages to him.

Notwithstanding this declaration, he further asserts that the defendants acted to conspire against him "under the color of their offices and in their individual capacity." To the extent this can be interpreted as a claim under 42 U.S.C. § 1983, Mr. Makoka's claim must still be dismissed.[1]

Challenges to the procedures used in a prison disciplinary hearing are not cognizable under § 1983 if a judgment in favor of the prisoner would imply that the prisoner's conviction and punishment were invalid. *Edwards v. Basilok*, 520 U.S. 641, 117 S. Ct. 1584 (1997); *see also Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994) (holding that recovery of damages for actions whose unlawfulness would render a conviction or sentence invalid requires proof that the conviction or sentence has been reversed, expunged, or declared invalid). Often called the "favorable termination" rule, *Heck* and *Balisok* establish that when a state prisoner files a claim under 42 U.S.C. § 1983, and the effect of his claim if successful would necessarily imply the invalidity of a prior administrative hearing, the prisoner does not have a viable § 1983 claim. *Edwards*, 520 U.S. at 645; *Heck*, 512 U.S. at 486-87.

In *Huey v. Stine*, 230 F.3d 226, 230 (6th Cir. 2000), the court applied the "favorable termination" rule in upholding dismissal of a 42 U.S.C. § 1983 action alleging a correctional officer's actions in assaulting an inmate and filing a false misconduct report about the incident, which resulted in disciplinary sanctions against the inmate, were cruel and unusual punishment. The Sixth Circuit stated it had previously applied the *Heck/Edwards* doctrine generally to prevent a prisoner found guilty in a prison disciplinary hearing from using § 1983 to collaterally attack the hearing's validity. 230 F.3d at 228-229. After review of intervening case law, the Sixth Circuit reaffirmed its prior holdings and stated:

> In order to grant the plaintiff in this case the relief that he seeks, we would have to unwind the judgment of the state agency.

*Id*. 230 F.3d at 230; *see also Williams v. Wilkinson*, Nos. 01-3082 & 01-3234, 2002 US App. LEXIS 23774, at *13-*15 (6th Cir. Nov. 15, 2002). The court declined to do so.

In the case before us, Mr. Makoka does, in fact, argue that the disciplinary convictions were invalid. To grant him relief as to any individual defendants because of their role in those proceedings would require an examination of the validity of those proceedings. Not only has Mr. Makoka failed to show that his disciplinary convictions were set aside, he has failed to challenge those convictions in a timely manner. It is now too late to do so, and he cannot use the instant lawsuit to bring claims that are precluded as time-barred.

---

[1] The disciplinary convictions occurred in August and September of 1999. Mr. Makoka's complaint was not filed until December of 2000. Thus, the complaint was filed beyond the one-year statute of limitations applicable to 42 U.S.C. § 1983 actions. *See* Tenn. Code Ann. § 28-3-104; *Doe v. Sullivan County*, 956 F.2d 545, 552 (6th Cir. 1992); *Holt v. Young*, No. M2000-00243-COA-R3-CV, 2001 Tenn. App. LEXIS 793, at *7 (Tenn. Ct. App. Oct. 25, 2001) (no Tenn. R. App. P. 11 application filed).

For the reasons set out above, we affirm the trial court's dismissal of the complaint. Costs of the appeal are taxed to the appellant, Tony Makoka.


_____
PATRICIA J. COTTRELL, JUDGE