Kenneth Allen WILLIAMS,
Plaintiff–Appellee,

v.

Reginald WILKINSON, Curtis Win-
gard, Patricia Sharp, and Morris
Bayer, Defendants–Appellants.

Nos. 01–3082, 01–3234.

United States Court of Appeals,
Sixth Circuit.

Nov. 15, 2002.

Before NORRIS and CLAY, Circuit
Judges; and O'MEARA, District Judge.*

CLAY, Circuit Judge.

This is a consolidated appeal. In Case
No. 01–3082, Defendants Reginald Wilkin-
son, director of the Madison Correctional
Institution ("MCI"), and Curtis Wingard,
Patricia Sharp, and Morris Bayer, correc-
tional officers at MCI where Plaintiff, Ken-
neth Allen Williams, is an inmate, appeal

---

* The Honorable John Corbett O'Meara, United
States District Judge for the Eastern District
of Michigan, sitting by designation.

from the district court's December 11, 2000, judgment in a civil case following a jury trial in which Plaintiff was awarded $2,107.22 in damages. In Case No. 01–3234, Defendants appeal from the district court's February 20, 2001 order, granting in part Plaintiff's renewed motion for injunctive relief.

For the reasons set forth below, we REVERSE the district court's orders denying Defendants' requests for judgment as a matter of law and REMAND the case with instructions that the district court vacate the jury's award, dismiss Plaintiff's § 1983 claim as not cognizable, and enter judgment in favor of Defendants.

## BACKGROUND

### Procedural History

On February 20, 1997, Plaintiff filed a *pro se* complaint alleging that Defendants violated 42 U.S.C. § 1983 by denying Plaintiff his due process rights in a Rules Infraction Board ("RIB") proceeding held on March 19, 1996. Defendants answered Plaintiff's complaint on March 21, 1997 and moved for summary judgment on September 15, 1997. The district court denied Defendants' motion on September 28, 1998. In its opinion and order, the court found that depriving a prisoner of a minimum degree of procedural due process in prison disciplinary hearings results in an "atypical and significant hardship in and of itself." (J.A. at 71.) The district court allowed Plaintiff to proceed with his § 1983 claim.

Defendants moved for reconsideration in light of the Supreme Court's decision in *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). Defendants argued that Plaintiff's claims were not cognizable under § 1983 because Plaintiff had not successfully overturned the RIB's guilty verdict. The district

court denied this motion on September 30, 1999. This Court subsequently decided *Huey v. Stine,* 230 F.3d 226 (6th Cir.2000), and Defendants renewed their motion for reconsideration arguing that because Plaintiff's suit, if successful, would question the validity of his conviction, *Huey* barred the § 1983 action. Defendants urged the district court to follow *Huey* and grant them summary judgment.

The district court denied the renewed motion for reconsideration. *See Williams v. Wilkinson,* 122 F.Supp.2d 894 (S.D.Ohio 2000). The district court attempted to distinguish *Huey* by observing that Plaintiff did not attack the state agency's judgment, but rather the process by which it reached its judgment. *See id.* at 901. The district court's opinion and order also denied Defendants' motion to dismiss originally filed on November 6, 2000, finding the motion to be "totally without merit." *Id.* at 902–03.

A three-day jury trial ensued. The court allowed Plaintiff to amend his complaint pursuant to Fed.R.Civ.P. 15(b) to include a claim that the drug testing procedures at MCI were so negligent as to violate due process. At the close of Plaintiff's case-in-chief and after all evidence was submitted, the court denied Defendant's motion for judgment as a matter of law. The jury returned a verdict in favor of Plaintiff, and against Sharp and Wingard. Judgment was entered on the jury verdict, and it is from this judgment that Defendants now appeal in Case No. 01–3082.

Thereafter, Plaintiff renewed his motion for injunctive relief, requesting that the court order Defendants to take the following measures:

(i) Implement a written policy that any [MCI] inmate defending himself in a Rule Infraction Board hearing, including but not limited to a hearing

arising out of an alleged positive drug test of the inmate, shall be entitled to have the witnesses he requests be present at said RIB hearing absent an overriding security or institutional concern, which overriding concern shall not include (a) either a determination of [MCI] personnel prior to said hearing that any such witness would not be credible or (b) a determination that testimony about a drug test is unnecessary because of the existence of documentation showing a positive drug test.

(ii) A copy of the completed Jury Interrogatories dated December 7, 2000, and Judgment dated December 11, 2000, in this case shall be placed and permanently maintained in any file maintained at [MCI] or by [MCI] personnel making any reference to Mr. Williams's conviction of a Rule II, Class 7 at the RIB Hearing conducted March 19, 1996.

(iii) There shall be no retaliation against Mr. Williams arising out of or relating to this lawsuit.

(J.A. at 183.) Following oral argument, the district court granted Plaintiff's motion as to requests (i) and (ii). It is from the district court's order granting Plaintiff injunctive relief from which Defendants now appeal in Case No. 01–3234.

### Facts

In February of 1996, Defendant Sharp, the substance abuse coordinator at MCI, informed Plaintiff that he had tested positive for marijuana. According to Sharp, a urine test Plaintiff allegedly took on January 16, 1996, produced the incriminating result, although Plaintiff denied having taken the test. As Sharp must do whenever a prisoner fails a drug test, Sharp drafted a conduct report initiating drug abuse charges. On February 13, 1996, Plaintiff formally received the "ticket" or conduct report alleging that he had tested positive for marijuana.

Plaintiff again explained, this time to Sergeant Orahood, the correctional officer who gave Plaintiff the ticket, that he had never taken a drug test while at MCI. Orahood nevertheless referred the matter to the RIB. During his meeting with Orahood, Plaintiff asked for the right to have Sharp and a fellow inmate, Allen Williams, testify on his behalf. Plaintiff claimed that inmate Allen Williams was actually the prisoner who produced the positive urine drug sample in question.

On March 19, 1996, the day of the hearing, Plaintiff claims that he had an "off-the-record" discussion with RIB Chairperson Sandra Fisher immediately before the hearing commenced. According to Plaintiff, Fisher told him he could not call witnesses during his hearing. Fisher reportedly told Plaintiff that she could deny a prisoner's request for a witness during an RIB hearing if she determined that the witness was not credible, and she had just determined that Allen Williams was not credible. After a ten minute hearing, the RIB found Plaintiff guilty. Plaintiff received a suspended fifteen-day sentence in disciplinary confinement, was denied a reduction in security classification, was denied a furlough to attend his father's funeral, and was required to participate in a substance abuse class–which meant fewer hours worked and lost wages from his prison job.

The RIB automatically forwards its decisions to the office of Defendant Wingard, the warden at MCI. Wingard affirmed the RIB decision, stating as follows:

Your appeal of the above-captioned Rules Infraction Board proceedings has been reviewed in accordance with Administrative Regulation 5120–9–09, paragraph (K). Contrary to your allega-

tions, you were validly charged with the proper rule violation. There was no prejudicial violation of procedural rights. There is factual evidence in the record to support the decision and the penalty assessed is authorized and appropriate. If you are not satisfied with this response, you may direct a final appeal to the Director of the Department of Rehabilitation and Correction, 1050 Freeway Drive North, Columbus, Ohio 43229, within fifteen (15) days after receipt of this response.

(J.A. at 367.) According to Plaintiff's testimony, he thereafter appealed the RIB decision to the Ohio Department of Rehabilitation and Correction ("ODRC"), but received no reply. Defendants deny that Plaintiff appealed to the ODRC.

## DISCUSSION

This Court reviews *de novo* a district court's denial of a motion for judgment as a matter of law brought pursuant to F.R. Civ. P. 50(b). *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 781 (6th Cir. 2002) (citing *Williams v. Nashville Network*, 132 F.3d 1123, 1130 (6th Cir.1997)). The threshold question is whether Plaintiff has successfully alleged a violation of his procedural due process rights. If none of the adverse consequences he alleges infringe a liberty interest that due process protects, then Plaintiff's claims must fail.

In *Wolff v. McDonnell*, the Supreme Court held that prisoners still enjoy certain procedural safeguards, including the right to call witnesses on their behalf during administrative hearings unless calling witnesses would raise legitimate prison security or administrative concerns. *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Yet prisoners only enjoy these procedures to the extent necessary to protect substantive rights. *See Washington v. Harper*, 494 U.S. 210, 220, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) ("[P]rocedural protections must be examined in terms of the substantive rights at stake."); *Olim v. Wakineekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) ("[The] constitutional purpose [of the process] is to protect a substantive interest.")

■ To state a procedural due process claim under § 1983, a plaintiff must demonstrate that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir.1999). The question then becomes which of prisoners' conceivable liberty interests receive Due Process Clause protection. In *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that the only liberty interest a prisoner may protect through § 1983 is "freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Thus, Plaintiff in this case had to prove he suffered an "atypical and significant hardship" to go forward with his § 1983 claim for denial of due process. *Id.*

Plaintiff did not endure anything that rises to the level of "significant and atypical hardship." *Sandin* expressly rejected a prisoner's contention that "any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation." *See id.* As punishment for the drug test that prison authorities allege Plaintiff failed, Plaintiff received a suspended fifteen-day sentence in disciplinary segregation, he lost a promised reduction in his security classification, was denied a furlough, and had to participate in a substance abuse program that interfered with his ability to earn money at his prison employment. None of these puni-

tive measures qualifies as a "significant and atypical hardship."[1] *See id.* (finding that even actual time in disciplinary segregation is not "atypical" or "significant"); *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (finding that prisoners do not have a federally protected right in remaining or being charged to a particular security level); *Bowser v. Vose,* 968 F.2d 105, 106 (1st Cir.1992) (collecting cases finding that prisoners have no federally protected right in being furloughed); *Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir.1989) (finding that prisoners have no protected liberty interest in prison employment).

Although the district court found that none of the sanctions rose to the level of an "atypical hardship" under *Sandin,* the court noted that Plaintiff did not base his claim on the type of punishment received, but on "the deprivation of basic procedural due process in the finding of guilt and imposition of a punishment. . . . Plaintiff is alleging the deprivation of basic procedural due process as it extends from the Due Process Clause itself, as opposed to the deprivation of a liberty interest created by state laws or prison regulations." (J.A. at 69). The district court concluded that, as a result, "the analysis in this case is . . . whether the *manner in which* the Rules Infraction Board conducted Plaintiff's hearing, arrived at a finding of guilt, and imposed a sanction, resulted in an 'atypical and significant hardship' on Plaintiff in relation to the ordinary incidents of prison life." (J.A. at 69) (emphasis added.) The court mistakenly focused on only half the issue—a procedural due process plaintiff bringing a § 1983 claim must show both that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process. *Hahn,* 190 F.3d at 716. The "manner in which" (or process by which) the plaintiff lost his interest is considered only to the extent that the interest is constitutionally protected.

■ We therefore hold that Plaintiff's claim fails at the inception inasmuch as Plaintiff did not suffer a deprivation of a recognized liberty interest for purposes of reinstating his § 1983 claim for denial of due process. However, had Plaintiff successfully alleged the deprivation of a protected liberty interest, the Supreme Court's decisions in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), would foreclose Plaintiff's claim. Often called the "favorable termination" rule, *Heck* and *Balisok* establish that when a state prisoner files a claim under 42 U.S.C. § 1983, and the effect of his claim if successful would necessarily imply the invalidity of a prior administrative hearing, the prisoner does not have a viable § 1983 claim. *See Edwards,* 520 U.S. at 645, 117

---

1. Plaintiff relies on an unpublished opinion, *Thomas v. Russell,* No. 97–4000, 2000 WL 32040 (6th Cir. Jan.6, 2000), for the proposition that a prisoner's § 1983 claim may go forward without the prisoner establishing an "atypical, significant" hardship. Plaintiff misinterprets *Thomas,* which, as an unpublished opinion, has no precedential value in any event. *See Mfrs.' Indus. Relations Ass'n v. E. Akron Casting Co.,* 58 F.3d 204, 208 (6th Cir.1995)(noting that unpublished opinions have no precedential value). In *Thomas,* this Court did not allow the state prisoner plain-

tiff's § 1983 claim to proceed as one for the denial of procedural due process in the absence of a protected liberty interest required by *Sandin;* rather, this Court held that the plaintiff's claim sounded in substantive due process, and therefore more appropriately fell under the auspices of *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). *Thomas,* 2000 WL 32040, at *1. This Court remanded the case to the district court for dismissal without prejudice for failure to exhaust administrative remedies. *Id.* at *3.

**558**

S.Ct. 1584; *Heck,* 512 U.S. at 486–87, 114 S.Ct. 2364.

In *Huey v. Stine,* this Court used the favorable termination rule to conclude that the plaintiff's § 1983 action for an alleged violation of his Eighth Amendment rights failed to state a cognizable claim because, to grant the plaintiff the relief he sought, this Court would necessarily have had to "unwind the judgment of the state agency." 230 F.3d 226, 230 (6th Cir.2000). Contrary to the district court's findings, the Plaintiffs in *Heck, Edwards,* and *Huey,* like Plaintiff in the matter at hand, did not seek to have their convictions expunged by way of their § 1983 claims. *See Edwards,* 520 U.S. at 644, 117 S.Ct. 1584; *Heck,* 512 U.S. at 479, 481, 114 S.Ct. 2364; *Huey,* 230 F.3d at 228. And, like the Plaintiffs in *Heck, Edwards,* and *Huey,* granting Plaintiff the relief he requested would necessarily imply the invalidity of the RIB's decision. Thus, *Heck, Edwards,* and *Huey* foreclose Plaintiff's claim. *See Heck,* 512 U.S. at 487, 114 S.Ct. 2364; *Balisok,* 520 U.S. at 648, 117 S.Ct. 1584; *Huey,* 230 F.3d at 230.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED in Case No. 01–3082 as well as in Case No. 01–3234, and the case is REMANDED to the district court with instructions to vacate the jury award.