RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0265P (6th Cir.)
File Name: 04a0265p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

SHAKUR MUHAMMAD, a/k/a
JOHN E. MEASE,
    *Plaintiff-Appellant,*

    *v.*

MARK CLOSE,
    *Defendant-Appellee.*

No. 02-1043

On Remand from the
United States Supreme Court.

Decided and Filed: August 11, 2004

Before: MARTIN and MOORE, Circuit Judges;
WISEMAN, District Judge.[*]

———————————

**OPINION**

———————————

BOYCE F. MARTIN, JR., Circuit Judge. This case returns to us on remand from the United States Supreme Court,

———————————

[*] The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

which reversed our decision affirming an award of summary judgment in favor of Mark Close, a corrections officer, on a claim brought by Shakur Muhammad, an inmate, pursuant to 42 U.S.C. § 1983. *Muhammad v. Close*, 124 S. Ct. 1303 (2004). As explained below, we REVERSE the judgment of the district court and REMAND for further proceedings.

**I**

Muhammad's section 1983 claim alleges that while he was incarcerated at the Standish Maximum Correctional Facility, corrections officer Close violated his First Amendment rights by charging him with threatening behavior, which necessitates pre-hearing lockup, in retaliation for prior lawsuits and grievance proceedings that Muhammad had instituted against Close. The sole relief that Muhammad seeks is $10,000 in compensatory and punitive damages "for the physical, mental, and emotional injuries sustained" during the six days of pre-hearing detention mandated by the charge of threatening behavior.

In our initial decision, we relied upon *Huey v. Stine*, 230 F.3d 226 (6th Cir. 2000), in concluding that Muhammad's section 1983 claim was barred by the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994). The *Heck* rule provides that "where success in a prisoner's §1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad*, 124 S. Ct. at 1304 (discussing *Heck*). Subsequently, in *Edwards v. Balisock*, 520 U.S. 641 (1997), the Supreme Court applied the *Heck* rule "in the circumstances of a §1983 action claiming damages and equitable relief for a procedural defect in a prison's administrative process, where the administrative action taken against the plaintiff could affect credits toward release based on good-time served." *Muhammad*, 124 S. Ct. at 1304 (discussing *Edwards*). In *Huey*, a panel of this Court stated

that "the *Heck/Edwards* doctrine [applies] generally to prevent a prisoner found guilty in a prison disciplinary hearing from using §1983 to collaterally attack the hearing's validity." 230 F.3d at 228-29 (adopting the reasoning of several unpublished opinions from our circuit). In this case, our conclusion that *Heck* barred Muhammad's section 1983 claim flowed directly from *Huey*, which we were bound to follow.

In reversing our decision, however, the Supreme Court ruled that the "precedent" upon which we had relied – i.e., *Huey* – was wrongly decided. *Muhammad*, 124 S. Ct. at 1306. According to the Court, the "view expressed" in *Huey* "that *Heck* applies categorically to all suits challenging prison disciplinary proceedings" is "mistaken[.]" *Muhammad*, 124 S. Ct. at 1306. The Court clarified that "the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules." *Id.* at 1304, n.1. It then reasoned that because determinations made in prison disciplinary proceedings "do not as such raise any implication about the validity of the underlying conviction, and although they may affect the duration of time to be served (by bearing on the award or revocation of good-time credits) that is not necessarily so." *Id.* at 1306. Because in this case "no good-time credits were eliminated by the prehearing action Muhammad called into question," the Court held that "[Muhammad's] §1983 suit challenging this action could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence." *Id.* Having overruled the portion of *Huey* upon which our previous decision relied, the Court reversed our decision finding that Muhammad's section 1983 claim was barred by *Heck*, and remanded this case for our "consideration of summary judgment on the ground adopted by the District Court." *Id.* at 1307.

## II

In considering the district court's award of summary judgment, we employ de novo review. *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 382 (6th Cir. 2004). In prior rulings in this case, the district court held that Muhammad had properly pleaded all the elements of a First Amendment retaliation claim, which are:

(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two--that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Close conceded that the first element was satisfied, inasmuch as Muhammad has a right to access the courts. Close argued, however, that he was entitled to summary judgment because there was insufficient evidence to satisfy the second and third elements. Where a defendant shows a lack of evidence on any particular element of the claim at issue, the plaintiff has the burden of offering affirmative evidence from which a reasonable fact finder could find in his favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Such evidence is required to be viewed in the light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994).

The magistrate recommended that Close's motion for summary judgment be granted, and the district court agreed. The district court's decision was based solely upon its determination that Muhammad had failed to produce

sufficient evidence to satisfy the third element, causation. The court held that the temporal proximity between the protected conduct and the alleged adverse action was weak and that there was no "direct evidence of animosity, such as statements made by the defendant, that the Court would be required to take as true." In the district court's view, Muhammad was simply "ask[ing] [the court] to trust his hunch that the defendant's adverse action against him was motivated by his past lawsuits," which is "insufficient to defeat a summary judgment motion . . . ."

As Muhammad maintains, however, in reaching its conclusion, the district court overlooked a key piece of evidence relating to causation: a type-written affidavit from inmate Bruce Coxton. The Coxton affidavit states as follows:

I, BRUCE COXTON, being first duly sworn deposes and says that the following statements are true and correct to the best of my knowledge, information, and beleif [sic]:

1.) In or around May 1997, I did hear two correction officers having a discussion about prisoner Mease-X [the plaintiff in this case] and they were clearly conspiring to cause him harm.

2.) I directly saw and heard officers M. Close and M. Glowicki standing approximately 3 feet from my cell door talking about how they were going to "get Mease-X ass."

3.) I directly observed Close and Glowicki talking about how they had to "stop him from filing that appeal and get his ass out of here." Glowicki responded to Close that "I should have killed the nigger when I had the chance."

4.) I directly watched and overheard Close telling Glowicki how to set Mease-X up by placing a knife

in his cell and than [sic] rush him and act like he accidentally got killed while trying to resist him.

5.) I wrote a kite to the unit case manager Wendy Reetz and told her what I had seen and heard regarding the officers [sic] threat to kill Mease-X.

6.) Case manager Reetz came to my cell and told me that if I did not minded [sic] my own business, I would be getting the same treatment.

7.) Subsequently, when I tried to access the Court of Appeals with my criminal case, Reetz withheld my pleadings beyond the time for which relief could be sought and denied me access to postage stating . . . that I should have minded my own business.

8.) I was also retaliated against for reporting this matter to Reetz and this could have seriously harmed Mease-X, maybe even his death as Close and Glowicki threatened.

9.) I attest that the foregoing is true and correct to the best of my knowledge, and make these statements under penalty of perjury.

The affidavit is signed and dated October 2, 2001. It was filed with the district court as an exhibit attached to Muhammad's objections to the magistrate's report and recommendation, which he prepared and submitted without the benefit of counsel.

We agree with Muhammad that the Coxton affidavit appears to be precisely the type of evidence of causation that the district court thought was lacking. Even if not determinative of the issue, this affidavit is, at the very least, a significant piece of evidence that – along with the other evidence in this case – must be examined in connection with

the causation analysis. Thus, we remand this case to the district court for further proceedings.

Close attempts to downplay the significance of the Coxton affidavit by arguing that: (1) the affidavit is not notarized; and (2) although dated prior to the date of the magistrate's report, it was not presented to the magistrate because it was filed as an exhibit to Muhammad's objections to the magistrate's report. Because the Coxton affidavit was completely ignored in the district court proceedings, this is the first time that Close has presented these arguments to any court. We decline to address these issues in the first instance. Close is free to advance these, and other, arguments in the district court on remand.

Additionally, Muhammad argues that the district court erred in rejecting his argument that temporal proximity between the protected conduct and the retaliatory action existed in this case, sufficient to prove causation, because he was away from the Standish Maximum Correctional Facility for much of the time between the filing of the second lawsuit and the incident in question. While we need not resolve this issue on appeal, given our reliance on the Coxton affidavit, we note that temporal proximity alone may be "significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004).

Therefore, the district court should, on remand, determine whether the Coxton affidavit alone, Muhammad's proof of temporal proximity alone, or both pieces of evidence together are sufficient to defeat Close's motion for summary judgment.

For these reasons, the district court's judgment is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.