334 F.3d 850
 Luis RAMIREZ, Plaintiff-Appellant,
v.
George M. GALAZA, Warden; James Gomez, Director of CDC; R. McEnroe, Lieutenant; O. Pena, Chief Deputy Warden; Adrian Chacon, Medical Assistant; Garth Embree, Physician; J. Batchelor, Examiner; Linda L. Melching, Chief Inmate Appeals Branch, Defendants-Appellees.
 No. 00-15994.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted December 6, 2002.
 Filed June 27, 2003.
 
 COPYRIGHT MATERIAL OMITTED Peter Huang, McDermott, Will & Emery, Palo Alto, CA, for the plaintiff-appellant.
 Thomas S. Patterson, Deputy Attorney General, San Francisco, CA, for the defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California; Robert E. Coyle, Chief Judge, Presiding. D.C. No. CV-99-06282-REC/DLB.
 Before COWEN,* HAWKINS and W. FLETCHER, Circuit Judges.
 OPINION
 COWEN, Circuit Judge:
 
 
 1
 California state prisoner Luis Ramirez brought this civil rights action under 42 U.S.C. § 1983 alleging violations of the Due Process and Equal Protection guarantees of the Fourteenth Amendment. Ramirez's complaint alleged that his constitutional rights were violated by the procedures utilized in a prison disciplinary hearing, and a subsequent administrative appeal. Ramirez also alleged that the conditions of his term of administrative segregation exceeded the normal hardships associated with incarceration. The District Court dismissed the challenge to the disciplinary procedures reasoning that Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), required Ramirez to invalidate his disciplinary sentence before seeking damages under § 1983. The District Court also dismissed Ramirez's claims regarding his two-year term of administrative segregation as lacking a protected liberty interest.
 
 
 2
 We conclude that Ramirez may challenge the conditions of his confinement under § 1983 because his claim, if successful, would not necessarily invalidate a disciplinary action that affects the fact or length of his confinement. We further conclude that Ramirez's challenge to his term of segregated confinement is cognizable under § 1983 as a potentially atypical and significant hardship. Finally, based on our interpretation of the favorable termination rule, we conclude that the District Court's dismissal of Ramirez's Equal Protection and supervisory liability claims was an abuse of discretion. We will therefore reverse the dismissal, and remand for further proceedings.
 
 I. BACKGROUND
 
 3
 Ramirez is incarcerated at the Corcoran State Prison in California. On July 27, 1997, a correctional officer discovered Ramirez's cellmate wounded inside their shared cell. Ramirez, the only other occupant, was charged with "battery of an inmate with a weapon with serious bodily injury." The charge stemmed from the report of the responding officer, and two medical reports prepared by the emergency room personnel who treated the cellmate's injuries. On September 27, 1997, the prison held a disciplinary hearing on the charges. During the hearing, Ramirez sought to call his cellmate and the medical staff to testify as to their statements. Both requests were denied. He was found guilty and sentenced to ten days of disciplinary detention and sixty days loss-of-privileges, and was referred to administrative segregation. Subsequently, he was assigned to administrative segregation for a term of twenty-four months. Ramirez filed two unsuccessful administrative appeals challenging the procedures used during the disciplinary process, and the resulting disciplinary sentence.
 
 
 4
 Ramirez then filed a complaint under 42 U.S.C. § 1983 in the United States District Court for the Eastern District of California alleging that the disciplinary hearing, and subsequent administrative appeals, violated his federal constitutional rights of Due Process and Equal Protection. Ramirez sought damages, declaratory relief, and an injunction requiring, among other things, the vacation of his disciplinary conviction. The matter was referred to a Magistrate Judge.
 
 
 5
 Pursuant to 28 U.S.C. § 1915A(a), the Magistrate Judge screened the complaint for possible dismissal. The Magistrate Judge reasoned that Ramirez's allegations regarding the procedures utilized at his disciplinary hearing, if proven, would necessarily imply that the outcome of the hearing was invalid. Citing the Supreme Court's decision in Edwards v. Balisok, the Magistrate Judge concluded that because Ramirez had not previously invalidated his disciplinary sentence, the constitutional challenges to the disciplinary hearing should be dismissed for failure to state a claim.
 
 
 6
 Separately, the Magistrate Judge determined that Ramirez's claims regarding the prison appeals process should be dismissed because the actions of prison officials in reviewing an administrative appeal could not serve as a basis for liability under § 1983. Finding no actionable claims, the Magistrate Judge recommended that Ramirez's complaint be dismissed without leave to amend, but without prejudice to refiling if his disciplinary sentence was invalidated through a writ of habeas corpus.
 
 
 7
 Ramirez filed objections to the report and recommendations of the Magistrate Judge. On May 8, 2000, the District Court adopted the Magistrate Judge's report and recommendations in full, and dismissed the complaint. Ramirez now appeals[1] and we exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291.
 
 II. DISCUSSION
 
 8
 We review de novo the District Court's dismissal of Ramirez's complaint under 28 U.S.C. § 1915A for failure to state a claim. Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir.2000). We review the denial of leave to amend for an abuse of discretion. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir.2000) (en banc). In reviewing the District Court's dismissal, "we consider only the contents of the complaint, taking as true all the allegations of material fact," construed in the light most favorable to the plaintiff. Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir.1997); see also Resnick, 213 F.3d at 447. We note finally that courts must generally construe pro se pleadings liberally. Resnick, 213 F.3d at 447.
 
 A. The Disciplinary Hearing
 
 9
 We begin with Ramirez's argument that Heck v. Humphrey and Edwards v. Balisok do not require the invalidation of his disciplinary sentence to pursue an action under § 1983 for the constitutional violations allegedly committed during his disciplinary hearing. To understand the District Court's rationale for dismissing these claims, it is necessary to examine the framework of the federal civil rights and habeas corpus statutes, and the Supreme Court cases explaining the use of § 1983 to challenge prison administrative decisions. Although several opinions of this Court have discussed the concerns underlying the "favorable termination rule," no decision has addressed whether the rule applies to prison disciplinary sanctions that do not affect the fact or length of a prisoner's confinement. See Nonnette v. Small, 316 F.3d 872, 878 (9th Cir.2002); Cabrera v. City of Huntington Park, 159 F.3d 374 (9th Cir.1998); Neal v. Shimoda, 131 F.3d 818 (9th Cir.1997); Butterfield v. Bail, 120 F.3d 1023 (9th Cir.1997); Gotcher v. Wood, 66 F.3d 1097 (9th Cir.1995), on remand, 122 F.3d 39 (9th Cir.1997). Thus, we also consider the numerous circuit court decisions on this issue.
 
 1.
 
 10
 While the Civil Rights Act of 1871 (now codified at 28 U.S.C. § 1983), and the federal habeas corpus statute, 28 U.S.C. § 2254, both provide access to the federal courts "for claims of unconstitutional treatment at the hands of state officials, ... they differ in their scope and operation." Heck, 512 U.S. at 480, 114 S.Ct. 2364. Section 1983 provides a remedy for injuries caused by violations of federal law by persons acting under the color of state law.[2] "Congress's purpose in enacting § 1983 was to create a novel civil remedy for violation of established constitutional rights." Martinez v. City of Oxnard, 270 F.3d 852, 856 n. 2 (9th Cir.2001). Given this unique legislative intent to provide a federal forum for the vindication of federal rights, courts historically declined to require § 1983 plaintiffs to exhaust state remedies. Patsy v. Bd. of Regents, 457 U.S. 496, 507, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); Sisk v. CSO Branch, 974 F.2d 116, 117 (9th Cir.1992). Congress altered this tradition in 1996 with the enactment of the Prison Litigation Reform Act by requiring prisoners to exhaust all available administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a)("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").
 
 
 11
 In contrast, the federal habeas corpus statute explicitly requires state prisoners to first seek relief in a state forum. 28 U.S.C. § 2254(b).[3] This exhaustion requirement "is rooted in considerations of federal-state comity," and allows "the state court system that has convicted a defendant the first opportunity ... to correct the errors made in the internal administration of their prisons." Preiser v. Rodriguez, 411 U.S. 475, 491-92, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); Young v. Kenny, 907 F.2d 874, 875-76 (9th Cir.1989). The burden of satisfying the exhaustion requirement of § 2254, and the absence of a similar restriction in § 1983, left the two statutes on a "collision course." Heck, 512 U.S. at 492, 114 S.Ct. 2364 (Souter, J., concurring in the judgment).
 
 2.
 
 12
 The Supreme Court first addressed the intersection between § 1983 and writs of habeas corpus in Preiser v. Rodriguez, holding that "when a state prisoner is challenging the very fact or duration of his physical confinement," and where "the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment," the prisoner's "sole federal remedy is a writ of habeas corpus." 411 U.S. at 500, 93 S.Ct. 1827. Conversely, Preiser concluded that "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." Id. at 499, 93 S.Ct. 1827.
 
 
 13
 The Court revisited Preiser in Heck v. Humphrey, involving a prisoner's § 1983 action alleging that state prosecutors and investigators had engaged in an unlawful investigation and knowingly destroyed exculpatory evidence. 512 U.S. at 478-79, 114 S.Ct. 2364. The prisoner's complaint sought compensatory and punitive damages, but not injunctive relief, or release from custody. Id. at 479, 114 S.Ct. 2364. The Supreme Court explained that a writ of habeas corpus "is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement ... even though such a claim may come within the literal terms of § 1983." Id. at 481, 114 S.Ct. 2364 (discussing Preiser, 411 U.S. at 488-90, 93 S.Ct. 1827). The Court then announced a new "favorable termination rule" regarding the validity of § 1983 claims by prisoners:
 
 
 14
 [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal... or called into question by a federal court's issuance of a writ of habeas corpus....
 
 
 15
 Id. at 486-87, 93 S.Ct. 1827. Absent such a showing, "[e]ven a prisoner who has fully exhausted available state remedies has no cause of action under § 1983...." Id. at 489, 93 S.Ct. 1827.
 
 
 16
 In Edwards v. Balisok, the Supreme Court extended the favorable termination rule to prison disciplinary actions that implicated the prisoner's term of confinement. In Edwards, a prisoner brought suit under § 1983 challenging the procedures used in a disciplinary hearing. Although the prisoner's conviction resulted in the loss of good-time credits, his suit sought only damages, and an injunction against future violations. 520 U.S. at 643-44, 117 S.Ct. 1584. The Court held that the prisoner could not circumvent the limitation on § 1983 suits imposed by Heck, because the alleged due process defects, if established, "necessarily imply the invalidity of the deprivation of his good-time credits." Id. at 646, 117 S.Ct. 1584. As that result would decrease the length of the prisoner's confinement, the Court concluded that the prisoner's claims were not cognizable under § 1983 until his disciplinary conviction was invalidated.
 
 
 17
 "When read together, there is a logical and coherent progression of Supreme Court jurisprudence" on the availability of § 1983 in prisoner litigation. Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir.2002). Suits challenging the validity of the prisoner's continued incarceration lie within "the heart of habeas corpus," whereas "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." Preiser, 411 U.S. at 498-99, 93 S.Ct. 1827. This distinction applies whether the term of incarceration results from a conviction or sentence imposed by a state court, or a prison disciplinary sanction. Edwards, 520 U.S. at 645, 117 S.Ct. 1584; Heck, 512 U.S. at 486-87, 114 S.Ct. 2364. However, nothing in Preiser, Heck, or Edwards holds that prisoners challenging the conditions of their confinement are automatically barred from bringing suit under § 1983 without first obtaining a writ of habeas corpus. Rather, the applicability of the favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement.
 
 
 18
 All but one of the circuit courts to consider this issue agree with our conclusion that the favorable termination rule applies only to § 1983 suits that affect the fact or duration of a prisoner's confinement.[4] In Brown v. Plaut, 131 F.3d 163 (D.C.Cir.1997), a prisoner filed a § 1983 action challenging a disciplinary hearing that resulted in a lengthy term of administrative segregation. Id. at 165-66. The D.C. Circuit held that the action could proceed because the Supreme Court "has never deviated from Preiser's clear line between challenges to the fact or length of custody and challenges to the conditions of confinement." Id. at 168.[5]
 
 
 19
 The Second Circuit adopted this conclusion in Jenkins v. Haubert, 179 F.3d 19 (2d Cir.1999), holding that the Supreme Court "has never announced that the Heck rule bars a prisoner's challenge under § 1983 to an administrative or disciplinary sanction that does not affect the overall length of his confinement." Id. at 27. The prisoner in Jenkins filed a § 1983 action alleging procedural due process violations during two disciplinary hearings that led to a sentence of administrative segregation. Id. at 20-21. Drawing on the Supreme Court's line of decisions, Jenkins explained that the plain meaning of "conditions of confinement" encompasses "any deprivation that does not affect the fact or duration of a prisoner's" sentence. Id. at 28. As the term of administrative segregation did not increase the prisoner's overall time of confinement, his § 1983 suit was not barred by the favorable termination rule. Id. at 27 ("[W]e hold that a § 1983 suit by a prisoner ... challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of the prisoner's confinement is not barred by Heck and Edwards.").
 
 
 20
 The Seventh Circuit adopted the Second Circuit's decision in DeWalt v. Carter, 224 F.3d 607 (7th Cir.2000), a § 1983 action alleging constitutional violations and retaliation leading to a disciplinary sanction that terminated the prisoner's job. Id. at 610-11. DeWalt reasoned that "[u]nlike the plaintiffs in Preiser, Heck, and Edwards," the prisoner's suit "does not challenge the fact or duration of confinement, but only a condition of his confinement—the loss of his prison job." Id. at 618.
 
 
 21
 Finally, a pair of decisions from the Third Circuit recognized the distinction between suits challenging the validity of the prisoner's continued incarceration, and suits merely challenging the conditions of prison life. In Leamer v. Fauver, an inmate brought a § 1983 suit alleging that prison officials unconstitutionally placed him in restrictive custody and denied him therapy for his sexual offenses. 288 F.3d at 535-537. The Third Circuit explained that although the disciplinary sanctions interfered with his treatment, and thus precluded the possibility of parole, "it did not necessarily affect the length of his incarceration, and thus Heck and Edwards did not apply." Torres, 292 F.3d at 149 (discussing Leamer, 288 F.3d at 542-44).
 
 
 22
 Similarly, in Torres v. Fauver, the court considered whether a former prisoner's § 1983 suit alleging due process violations during a disciplinary hearing triggered the favorable termination rule. In Torres, the plaintiff was sentenced to a period of administrative segregation following an unsuccessful escape attempt. Id. at 143-44. The plaintiff served his period of disciplinary confinement, and then completed his prison sentence in its entirety. Id. at 144. Following his release, the former prisoner filed a § 1983 action. Id. Surveying the Supreme Court's decisions, the Third Circuit concluded that a § 1983 suit raising claims concerning only the conditions of prison confinement is not subject to the favorable termination rule. Torres, 292 F.3d at 150. Noting that the plaintiff was released from prison prior to filing his suit, the court held that the distinction between suits implicating only the conditions, and not the fact or duration, of confinement applies whether or not the plaintiff remains in custody. Id. Therefore, the court concluded that in any § 1983 suit challenging a prison disciplinary decision, the threshold question is whether the sanction affects the fact or length of a prisoner's confinement. Id. at 145.
 
 
 23
 Like these circuits, we hold that the favorable termination rule does not apply to § 1983 suits challenging a disciplinary hearing or administrative sanction that does not affect the overall length of the prisoner's confinement. Where the prison's alleged constitutional error does not increase the prisoner's total period of confinement, a successful § 1983 action would not necessarily result in an earlier release from incarceration, and hence, does not intrude upon the "heart" of habeas jurisdiction. In such cases, the favorable termination rule of Heck and Edwards does not apply.
 
 3.
 
 24
 Our holding also clarifies our prior decisions addressing the availability of habeas corpus to challenge the conditions of imprisonment. We have held that a prisoner may seek a writ of habeas corpus under 28 U.S.C. § 2241 for "expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir.1989) (citing McCollum v. Miller, 695 F.2d 1044, 1047 (7th Cir.1982)). Bostic does not hold that habeas corpus jurisdiction is always available to seek the expungement of a prison disciplinary record. Instead, a writ of habeas corpus is proper only where expungement is "likely to accelerate the prisoner's eligibility for parole." Bostic, 884 F.2d at 1269 (emphasis added). In Bostic, we cited the Seventh Circuit's decision in McCollum which presumed that where a disciplinary infraction might delay a prisoner's release on parole, the prisoner may, "by analogy to Preiser," challenge the disciplinary sentence through habeas corpus. McCollum, 695 F.2d at 1047. Bostic thus holds that the likelihood of the effect on the overall length of the prisoner's sentence from a successful § 1983 action determines the availability of habeas corpus. Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir.1997) (finding "no difficulty in concluding that a challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement") (emphasis added).
 
 
 25
 Our decision in Neal v. Shimoda, 131 F.3d 818 (9th Cir.1997), illustrates the importance of measuring the likelihood that a suit under § 1983 will affect the length of the prisoner's confinement. In Neal, two state prisoners filed suits under § 1983 alleging that they were classified as sex offenders in violation of the Due Process and Ex Post Facto guarantees. Id. at 822-23. Among other harms, both inmates argued that the classification affected their eligibility for parole. Id. We held that Heck did not require the inmates to invalidate their classification before bringing suit under § 1983, because a favorable judgment "will in no way guarantee parole or necessarily shorten their prison sentences by a single day." Id. at 824. The prisoner suits did not seek to overturn a disciplinary decision that increased their period of incarceration. Rather, a successful § 1983 action would provide only "a ticket to get in the door of the parole board." Id. A favorable judgment, therefore, would not "undermine the validity of their convictions," or alter the calculus for their possible parole. Id.
 
 
 26
 Neal makes clear that under Preiser habeas jurisdiction is proper where a challenge to prison conditions would, if successful, necessarily accelerate the prisoner's release. Thus, Neal accords with our holding here that habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence.
 
 4.
 
 27
 With this framework established, we turn to the allegations of Ramirez's complaint. Citing Bostic, the State argues that Ramirez's allegation that the prison disciplinary process violated the requirements of Due Process is logically inseparable from an attack on the outcome of that hearing, and that a judgment in his favor would necessarily imply the invalidity of his disciplinary conviction.[6]
 
 
 28
 Our inquiry focuses on whether a successful challenge to the procedures used in the hearing "could be such as necessarily to imply the invalidity of the judgment" and a reduction of the length of Ramirez's confinement. Edwards, 520 U.S. at 645, 117 S.Ct. 1584; see also Leamer, 288 F.3d at 543 ("The operative test under Preiser and its progeny" is whether a successful § 1983 suit "would necessarily imply that he would serve a shorter sentence...."). Here, if successful, Ramirez will not necessarily shorten the length of his confinement because there has been no showing by the State that the expungement Ramirez seeks is likely to accelerate his eligibility for parole. Like the inmates in Neal, if Ramirez is successful in attacking the disciplinary hearing and expunging his sentence, "[t]he parole board will still have the authority to deny [his] request[ ] for parole on the basis of any of the grounds presently available to it in evaluating such a request." Neal, 131 F.3d at 824. As Ramirez's suit does not threaten to advance his parole date, his challenge to his disciplinary hearing is properly brought under § 1983.[7]
 
 B. The Term of Administrative Segregation
 
 29
 Having determined that this action may proceed under § 1983, we turn to Ramirez's argument that the District Court also erred in dismissing his Due Process challenge to his disciplinary sentence. Liberally interpreted, Ramirez's pro se complaint and objections to the Magistrate Judge's report and recommendation alleged that the disciplinary and appeals boards denied his request to examine adverse witnesses in violation of his Due Process rights. Ramirez's objections also alleged that prison officials "added things" to his appeal to mask the procedural errors committed at the disciplinary hearing. The District Court held that because inmates have no constitutional right to a prison grievance system, the actions of the prison officials in reviewing his internal appeal cannot create liability under § 1983.
 
 
 30
 The Due Process clause provides prisoners two separate sources of protection against unconstitutional state disciplinary actions. First, a prisoner may challenge a disciplinary action which deprives or restrains a state-created liberty interest in some "unexpected manner." Sandin v. Conner, 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Ramirez's claimed loss of a liberty interest in the processing of his appeals does not satisfy this standard, because inmates lack a separate constitutional entitlement to a specific prison grievance procedure. Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988). Accordingly, Ramirez's claim lacks the necessary constitutional foundation, and thus does not extend his confinement in an unexpected manner.
 
 
 31
 Second, a prisoner may challenge a state action which does not restrain a protected liberty interest, but which nonetheless imposes some "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484, 115 S.Ct. 2293; Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir.1996). If the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process. Sandin, 515 U.S. at 484, 115 S.Ct. 2293; Keenan, 83 F.3d at 1089.
 
 
 32
 There is no single standard for determining whether a prison hardship is atypical and significant, and the "condition or combination of conditions or factors ... requires case by case, fact by fact consideration." Keenan, 83 F.3d at 1089. Three guideposts cited in Sandin's analysis, however, provide a helpful framework: 1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence. Sandin, 515 U.S. at 486-87, 115 S.Ct. 2293; Keenan, 83 F.3d at 1089.
 
 
 33
 In the present case, the District Court did not consider whether Ramirez's disciplinary segregation imposed an atypical and significant hardship warranting additional Due Process protections during his hearing. Although we cannot determine from the present record whether his administrative segregation imposed such a burden, we note that Ramirez's objections included allegations that his segregated unit was overcrowded and violent, and that the isolation severed ties to his family. Ramirez also alleged that during his segregation, "he was made a patient of [ ] psychiatric programs." Most significantly, Ramirez was segregated for a period of two years, and "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards." Keenan, 83 F.3d at 1089 (quoting Hutto v. Finney, 437 U.S. 678, 686, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)). We therefore remand the issue of Ramirez's segregation for application of the Sandin factors, and a determination, if necessary, of whether Ramirez was provided the process due. Id.
 
 C. Dismissal With Prejudice
 
 34
 Finally, Ramirez argues that the District Court abused its discretion in dismissing his complaint with prejudice. Leave to amend should be granted unless the pleading "could not possibly be cured by the allegation of other facts," and should be granted more liberally to pro se plaintiffs. Lopez, 203 F.3d at 1130, 1131 (citation omitted). The District Court did not find that Ramirez's claims under the Equal Protection clause or his claims of supervisory liability could not be cured by the allegation of additional facts. Instead, the District Court determined that Ramirez's entire complaint could not proceed until he invalidated his disciplinary sentence. As explained, that conclusion rests on an erroneous application of the favorable termination rule. Accordingly, we reverse the dismissal of these claims and remand with the instruction that Ramirez be permitted an opportunity to amend his complaint.
 
 CONCLUSION
 
 35
 We reverse the order of the District Court dismissing Ramirez's complaint which challenged his disciplinary sentence, and remand with leave to amend the complaint and for any additional proceedings consistent with our holding.
 
 
 36
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 Notes:
 
 
 *
 The Honorable Robert E. Cowen, Senior United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 Ramirez has not appealed the dismissal of his Equal Protection and respondeat superior claims against the prison administrators, although he does appeal the District Court's dismissal of these claims with prejudice
 
 
 [2]
 42 U.S.C. § 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
 
 
 [3]
 28 U.S.C. § 2254(b) provides:
 An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State; or there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant.
 
 
 [4]
 InHuey v. Stine, 230 F.3d 226 (6th Cir. 2000), the Sixth Circuit held that the favorable termination rule applies even to suits challenging only the conditions of prison confinement. In Huey, a prisoner brought a § 1983 action seeking to challenge a sentence of administrative detention. The Sixth Circuit held that the relief sought by the prisoner would require the court to "unwind the judgment of the state agency," a result the court viewed as impermissible under Edwards. Id. at 230. The Sixth Circuit's opinion did not elaborate on its disagreement with the other circuit decisions addressing this question, and "failed to consider whether it mattered that the disciplinary measures at issue did not affect the duration of the prisoner's incarceration." Torres, 292 F.3d at 149 n. 15.
 
 
 [5]
 The D.C. Circuit also cited the outcome inSandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), as evidence of the availability of § 1983 actions to challenge the conditions of prison confinement. In Sandin, a prisoner was found guilty of a disciplinary infraction, leading to a period of administrative segregation. Id. at 475-76, 115 S.Ct. 2293. The prisoner challenged the determination through an internal appeal, but also filed suit under § 1983. On the merits, the Supreme Court held that a prisoner may only allege a Due Process claim where the disciplinary restraint imposes "atypical and significant hardship ... in relation to the ordinary incidents of prison life." Id. at 484, 115 S.Ct. 2293. Sandin is noteworthy because the Supreme Court addressed the substance of the prisoner's constitutional claim despite the fact that the prisoner had not invalidated the disciplinary sanction at issue. Plaut, 131 F.3d at 168. As Heck sought to "deny the existence of a cause of action" under § 1983 absent a prior invalidation of the state conviction, the Court's silence in Sandin supports our conclusion that the favorable termination rule does not extend to suits challenging only the conditions of confinement. Heck, 512 U.S. at 489, 114 S.Ct. 2364.
 
 
 [6]
 Ramirez's complaint seeks to "expunge all references to the disciplinary charge," and prohibit the State "from considering any such reference in any way when they fix plaintiff's terms and decide whether plaintiff should be released on parole." App. at 14. Ramirez asserts in his reply brief that he is not appealing the expungement of his record for the purpose of parole evaluation. This argument attempts to modify the relief sought in his complaint by introducing a factual matter not presented to the District Court. We have consistently held that a party may not raise new issues of fact on appeal after declining to present those facts before the trial courtMauro v. Arpaio, 188 F.3d 1054, 1062 n. 6 (9th Cir.1999); United States v. Lucas, 963 F.2d 243, 246 (9th Cir.1992).
 
 
 [7]
 For this reason, we need not consider the broader question—opened inSpencer v. Kemna, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)—of whether the favorable termination rule applies to former or current prisoners who cannot seek relief under the federal habeas corpus statute. In Spencer, a state prisoner filed a petition for a writ of habeas corpus seeking to invalidate the revocation of his release on parole. While the petition was pending, his sentence expired, and he was released, leading the district court to dismiss the petition as moot. Id. at 5-6, 118 S.Ct. 978. The Supreme Court agreed, holding that the prisoner's petition did not present a case or controversy within the meaning of Article III. Id. at 14-16, 118 S.Ct. 978.
 The Justices also expressed their views on the boundaries of the favorable termination rule. The majority opinion briefly noted the prisoner's argument that the holding of Heck precluded his habeas petition from becoming moot upon release from prison. The prisoner argued that because Heck requires him to invalidate his conviction through a writ of habeas corpus, he must be permitted to pursue his petition as a prerequisite to bringing a suit for damages. In response, the majority observed that a § 1983 suit might still be possible, provided the prisoner's allegations did not necessarily imply the invalidity of his conviction. Id. at 17, 118 S.Ct. 978. In addition, the majority dismissed the prisoner's Heck dilemma in dictum as a "great non sequitur, unless one believes (as we do not) that a § 1983 action for damages must always and everywhere be available." Id.
 In concurrence, Justices Souter, O'Connor, Ginsburg, and Breyer saw nothing to preclude a suit under § 1983. Writing for these concurring Justices, Justice Souter reiterated his earlier position in Heck that "a former prisoner, no longer `in custody,' may bring a § 1983 action ... without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." Id. at 21, 118 S.Ct. 978 (Souter, J., concurring). Justice Ginsburg concurred separately with this view, writing that "[i]ndividuals without recourse to the habeas statute because they are not `in custody'... fit within § 1983's `broad reach'." Id. at 21, 118 S.Ct. 978 (Ginsburg, J., concurring) (quoting Heck, 512 U.S. at 503, 114 S.Ct. 2364 (Souter, J., concurring in the judgment)). In dissent, Justice Stevens viewed as "perfectly clear" a prisoner's right to bring suit under § 1983 where a remedy through habeas is unavailable. Id. at 25 n. 8, 118 S.Ct. 978 (Stevens, J., dissenting). The concurring and dissenting opinions thus "revealed that five Justices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be." Jenkins, 179 F.3d at 26.