Kevin Burton LINDGREN, Plaintiff,

v.

Ben CURRY, et al., Defendants.

No. CV 04–07633–FMC(CT).

United States District Court,
C.D. California.

June 26, 2006.

California Men's Colony, San Luis Obispo, CA, Plaintiff in pro per.

Deputy Attorney General G. Michael German, Office of the California Attorney General, San Diego, CA, for Defendants.

## ORDER ACCEPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

COOPER, District Judge.

Pursuant to 28 U.S.C. § 636, the court has reviewed the entire file de novo, including the magistrate judge's report and recommendation. The court agrees with the recommendation of the magistrate judge.

IT IS ORDERED:

1. The report and recommendation is accepted.

2. Judgment shall be entered consistent with this order.

3. The clerk shall serve this order and the judgment on all counsel or parties of record.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE ON A CIVIL RIGHTS COMPLAINT

TURCHIN, United States Magistrate Judge.

This report and recommendation is submitted to the Honorable Florence–Marie Cooper, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California. For the reasons discussed below, the magistrate judge recommends that defendants' motion to dismiss be granted, and the action be dismissed with prejudice.

### SUMMARY OF PROCEEDINGS

On December 29, 2004, plaintiff, a state prisoner proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983.

On February 24, 2005, plaintiff filed a first amended complaint ("FAC"). The FAC names as defendants: (1) Ben Curry, Chief Deputy Warden of California Men's Colony ("CMC"); (2) John Marshall, Warden of CMC; and (3) Jeanne Woodford, former Director of California Department of Corrections.[1] Defendants are named individually and in their official capacities. (FAC at 2–3). The FAC charges that plaintiff's constitutional right to due process was violated during his incarceration at CMC. According to the FAC, the Fourteenth Amendment was violated when plaintiff was retained in the administrative segregation unit ("ASU") after the expiration of a disciplinary term in the security housing unit ("SHU") imposed for violation of prison rules. As relief the FAC demands money damages. (FAC at 3, 5–10).

On March 17, 2006, a Rule 12(b)(6) motion to dismiss the FAC was filed by defendants Curry, Marshall, and Woodford. On May 4, 2006, plaintiff filed his opposition. Defendants filed a reply on May 10, 2006.

### DISCUSSION

#### Rule 12(b)(6)

Defendants have filed a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. " '[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Terracom v. Valley National Bank*, 49 F.3d 555, 558 (9th Cir.1995) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Pro se pleadings are liberally construed. *Ortez v. Washing-*

---

1. Effective July 1, 2005, the California Department of Corrections ("CDC") has been abolished and replaced with the California Department of Corrections and Rehabilitation ("CDCR"), which succeeds to all of the CDC's powers and duties. *See* Cal. Gov't Code §§ 12838(a), 12838.5.

ton County, 88 F.3d 804, 807 (9th Cir. 1996). Generally, review is limited to the contents of the complaint. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir.1994). However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Cooper v. Pickett,* 137 F.3d 616, 622 (9th Cir.1997). Also, a court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir.2001). Allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party. *Clegg v. Cult Awareness Network,* 18 F.3d at 754. "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.) (citations omitted), amended by 275 F.3d 1187 (2001). A plaintiff's civil rights claim can be "fatally undermined" by the attachments to his complaint. *Id.*

*Section 1983 Requirements*

■ In order to state a claim under section 1983, a plaintiff must allege that: (1) the defendants were acting under color of state law at the time the complained of acts were committed; and (2) the defendants' conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Karim–Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 624 (9th Cir.1988); *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir.1985) (en banc), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). The complaint must also allege in specific terms how each defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is an affirma-

tive link or connection between the defendants' actions and the claimed deprivations. *See Rizzo v. Goode,* 423 U.S. 362, 372–73, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *May v. Enomoto,* 633 F.2d 164, 167 (9th Cir.1980); *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978).

■ In a section 1983 action a supervisory official cannot be held liable under the theory of respondeat superior. A supervisory official may be liable for constitutional claims if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego,* 942 F.2d 1435, 1446–47 (9th Cir.1991) (en banc), *cert. denied,* 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992); *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989).

*Capacity*

■ In their motion to dismiss defendants contend that they are entitled to Eleventh Amendment immunity from suit because the FAC names them in their official capacities. The FAC names defendants in both individual and official capacities. (FAC at 3). Defendants are not entitled to immunity. *See Ashker v. California Department of Corrections,* 112 F.3d 392 (9th Cir.), *cert. denied,* 522 U.S. 863, 118 S.Ct. 168, 139 L.Ed.2d 111 (1997). However, as noted in *Ashker,* "[t]o the extent that an alternative claim was asserted against the defendants in their official capacities, that claim is, of course, barred." *Id.* at 395 n. 3.

*Retention in Administrative Segregation*

In their motion to dismiss defendants assert that the FAC fails to state a cognizable claim based upon plaintiff's retention in the ASU after the expiration of the

disciplinary SHU term imposed for violation of prison rules. Defendants contend that plaintiff had no liberty interest in general population housing.

According to the FAC and its attachments, plaintiff has been incarcerated at CMC since 2001. (FAC at 1, 5, attachments at 32).[2] In May 2003 CMC authorities began an investigation after being told by a confidential informant that plaintiff and his mother were conspiring to smuggle drugs into the prison during her visits with him. Information gathered during the investigation indicated that other inmates were arranging to have money sent to Ms. Lindgren, and that plaintiff was distributing and selling drugs within the prison. (FAC attachments at 28, 35, 61). A search warrant was obtained to be executed upon Ms. Lindgren when she arrived at the prison on August 6, 2003, for her scheduled visit with plaintiff. When searched on August 6, Ms. Lindgren was found to have hidden inside her pants packages containing heroin, marijuana, and amphetamines. She stated that she was smuggling the packages to plaintiff at his request, and that other individuals were involved in the endeavor. Ms. Lindgren was placed under arrest for drug possession and other crimes, and transported to jail. (FAC attachments at 27–30, 32, 36–37, 42–45, 49).

Later in the day on August 6 plaintiff was removed from general population housing, placed in the ASU, and given written notice that the information and events described above were the reason for the transfer. The written notice advised plaintiff that he was "viewed to represent a threat to the safety and security of the institution," and that he was being charged with violating Title 15, California Code of Regulations § 3016 (conspiring to introduce a controlled substance into pris-

on for distribution). The written notice further advised plaintiff that a referral for criminal prosecution would be made to the San Luis Obispo County District Attorney's Office. (FAC attachments at 12, 37, 49, 53).

The investigation continued, and on August 8 CMC authorities learned that inmates Briseno and Santelilane were also participants in the conspiracy involving plaintiff and his mother. They too were charged and transferred to the ASU. (FAC attachments at 26–27, 31).

On August 14 plaintiff appeared before CMC's "Institution Classification Committee", ("ICC") for a hearing on his ASU placement. The ICC noted that given the nature of the charged misconduct, plaintiff's presence in the prison's general population would jeopardize individuals' safety and institutional security. The ICC concluded that the ASU placement was appropriate pending completion of the investigation and the disciplinary process. A written "classification chrono" memorializing the decision and the reasons for it was issued on the same date. On September 3 the "Classification Staff Representative" ("CSR") issued written approval of a 90–day retention in the ASU. (FAC attachments at 13, 23–24).

The District Attorney accepted the referral from CMC and initiated criminal proceedings against plaintiff in San Luis Obispo County Superior Court for conspiracy to transport controlled substances in violation of California Penal Code § 182 and Health & Safety Code § 11352. (FAC attachments at 17, 54–55, 100). On September 17, 2003, CMC authorities issued plaintiff a written "Rules Violation Report" ("RVR") formally charging him with the prison rules violation of violating California

---

**2.** Plaintiff failed to number the pages of the FAC's attachments. (*See* Local Rule 11–3).   The court has done so for ease of reference.

Code of Regulations § 3016 (conspiring to introduce a controlled substance into prison for distribution). The potential punishment for a guilty finding on this RVR included the forfeiture of good-time credits and a disciplinary term in the SHU. Pursuant to California Code of Regulations § 3316(c), plaintiff signed a form requesting postponement of the hearing on his RVR until after resolution of the criminal proceedings. (FAC attachments at 13, 54–55, 92, 99). The criminal proceedings were ultimately completed about a year later, on August 25, 2004, when plaintiff entered a guilty plea in Superior Court and received a 13–year sentence. (FAC attachments at 100).

On October 16, 2003, the ICC conducted a review of plaintiff's ASU placement with plaintiff in attendance. The ICC concluded that the placement was still appropriate. A written classification chrono memorializing the decision and the reasons for it was issued on the same date. On October 28 the CSR issued written approval of a 90–day retention in the ASU. (FAC attachments at 13, 18, 25).

On December 11, 2003, the ICC conducted a review of plaintiff's ASU placement with plaintiff in attendance. The ICC concluded that the placement was still appropriate. A written classification chrono memorializing the decision and the reasons for it was issued on the same date. On January 6, 2004, the CSR issued written approval of an 80–day retention in the ASU. (FAC attachments at 13, 16–17, 26).

On February 5, 2004, the ICC conducted a review of plaintiff's ASU placement with plaintiff in attendance. The ICC concluded that the placement was still appropriate. A written classification chrono memorializing the decision and the reasons for it was issued on the same date. On February 18 the CSR issued written approval of a 65–day retention in the ASU. (FAC attachments at 13, 17–18). Shortly after the

ICC review plaintiff initiated an administrative grievance in which he asserted that he was entitled to be transferred from the ASU to general population housing despite the fact that both the criminal proceedings and the RVR remained pending. (FAC attachments at 4–8). Plaintiff's transfer request was denied in a "second level" written decision issued by CMC officials on April 2, 2004. When he appealed the decision it was upheld in a "Director's level" written decision issued by CDC officials on July 12, 2004. The written decisions noted that plaintiff remained a security threat so long as the criminal proceedings and the RVR remained pending against him. (FAC attachments at 2–3, 10–14).

On April 8, 2004, the ICC conducted a review of plaintiff's ASU placement with plaintiff in attendance. The ICC concluded that the placement was still appropriate. On May 4 the CSR issued written approval of a 15–day retention in the ASU. (FAC attachments at 2, 5, 19, 51).

On May 12, 2004, a correctional officer issued a written notice alerting CMC officials that plaintiff had obtained prison investigators' reports from his criminal defense attorney, and thus might be able to identify some of the confidential informants who had provided information about his drug trafficking. The notice pointed out that retaining plaintiff in the ASU would help ensure the safety of the informants. (FAC attachments at 61). On May 20 a written notice reiterating the reasons for plaintiff's ASU placement was issued. (FAC attachments at 54–55). On May 27 the ICC conducted a review of plaintiff's ASU placement with plaintiff in attendance. The ICC concluded that the placement was still appropriate. A written classification chrono memorializing the decision and the reasons for it was issued on the same date. (FAC attachments at 19, 54–55).

On June 10, 2004, the ICC conducted a review of plaintiff's ASU placement with plaintiff in attendance. The ICC considered the recommendation from a correctional officer from the Investigative Services Unit that plaintiff be transferred from the ASU to general population housing. The ICC concluded that the transfer would be appropriate. A written classification chrono memorializing the decision and the reasons for it was issued on the same date. (FAC attachments at 22, 90). On June 16 plaintiff was transferred to general population housing, but later the same day he was returned to the ASU. On June 24 the ICC held a hearing on the issue of plaintiff's placement. Plaintiff attended the hearing. The decision was made to retain plaintiff in the ASU because CMC staff who were providing evidence against plaintiff in the criminal proceedings and/or RVR proceedings expressed concern over plaintiff returning to the prison's general population before the proceedings had been completed. Plaintiff was believed to be a threat to the safety of individuals and to the security of the prison. A written classification chrono memorializing the decision and the reasons for it was issued on the same date. On July 13 the CSR issued written approval of a 90–day retention in the ASU. (FAC at 6, attachments at 20–21, 56–57, 90, 95–96, 98).

The criminal proceedings against plaintiff were completed on August 25, 2004. CMC officials received notice on August 31 that plaintiff had been sentenced. (FAC attachments at 92, 100). On September 16 the ICC conducted a review of plaintiff's ASU placement with plaintiff in attendance, and concluded that it was appropriate to retain him pending adjudication of the RVR. A written classification chrono memorializing the decision and the reasons for it was issued on the same date. The CSR issued written approval of a 90–day retention in the ASU. (FAC attachments at 90–91).

The hearing on plaintiff's RVR was held on September 19, 2004, and plaintiff was found guilty. The punishment meted out was an 8–month term in the SHU and the forfeiture of 180 days of good-time credit. The worksheet used by prison staff to calculate plaintiff's disciplinary SHU term indicated that the charged offense carried a "low term" of 6 months, an "expected term" of 9 months, and a "high term" of 12 months. Plaintiff received the "expected term" minus 1 month (for the mitigating factor of "no prior similar behavior"). The worksheet stated that plaintiff's "minimum eligible release date" ("MERD") was February 6, 2004, and that his "maximum date of release from SHU" was April 6, 2004. Plaintiff remained in the ASU after the RVR hearing. He did not ultimately serve a term in the SHU. (FAC attachments at 92, 99).

On October 14, 2004, the ICC conducted a review of plaintiff's placement with plaintiff in attendance. The ICC concluded that plaintiff should be retained in the ASU until he could be transferred to another prison. Space was not immediately available at another prison with the appropriate security level. The ICC declined to place plaintiff in general population housing because of safety and security concerns, as staff working there had provided evidence against him in the criminal proceedings. A written classification chrono memorializing the decision and the reasons for it was issued on the same date. On November 9 the CSR issued written approval of a 90–day retention in the ASU pending transfer to another prison. (FAC attachments at 92–93). However, the planned transfer of plaintiff to another prison did not ultimately occur. In January 2005 plaintiff was moved from the ASU to general population housing within

CMC, where he remains. (Plaintiff's Opposition at 3).

In the FAC plaintiff raises a due process challenge not to his initial placement in the ASU, but to his retention in the ASU past a certain date. Plaintiff points out that there was a prescribed punishment range for the prison rules violation of conspiring to introduce a controlled substance into prison for distribution, and contends that he was entitled to a transfer from the ASU to general population housing immediately following the date his disciplinary SHU term would have expired had he begun serving it on the day he was originally placed in the ASU (August 6, 2003). Under plaintiff's theory, the desired transfer to general population housing would have occurred on the "minimum eligible release date" ("MERD") calculated to be in February 2004, or, at the latest, on the "maximum date of release from SHU" calculated to be in April 2004. (FAC at 3, 5, 9, attachments at 16, 99). Plaintiff was actually transferred to general population housing approximately nine months after the later of these two dates, and approximately four months after the hearing on his RVR.[3] (Plaintiff's Opposition at 3).

The purpose of administrative segregation is to provide " 'secure housing' " for an inmate " 'where reasons exist that the inmate's continued presence in the general population would . . . endanger the security of the institution; [or] jeopardize the integrity of a serious misconduct or criminal investigation; [or] endanger the safety of the inmate or others.' " *Lira v. Herrera,* 427 F.3d 1164, 1165 n. 1 (9th Cir.2005)

(quoting CDC's Department of Operations Manual §§ 62050.10.1, 62050.10.3).

Plaintiff claims that defendants denied him due process by retaining him in the ASU, but administrative segregation does not necessarily impose a sufficiently "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" such that a prisoner has the right to due process when placed therein. *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see also Ramirez v. Galaza,* 334 F.3d 850, 860–61 (9th Cir.2003), *cert. denied,* 541 U.S. 1063, 124 S.Ct. 2388, 158 L.Ed.2d 963 (2004). Here, even if the conditions imposed on plaintiff in the ASU imposed a hardship sufficient to trigger due process concerns, plaintiff received all the process he was due. After initial placement in administrative segregation, it is sufficient if prison officials hold an informal nonadversarial hearing within a reasonable time, inform the prisoner of the charge against him or the reasons for segregation, and allow the prisoner to present his views. *Toussaint v. McCarthy,* 801 F.2d 1080, 1100 (9th Cir.1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). During ongoing retention in administrative segregation, it is sufficient if prison officials conduct periodic reviews of the placement. *Toussaint v. McCarthy,* 926 F.2d 800, 803 (9th Cir.1990) (review of administrative segregation every 120 days constituted due process), *cert. denied,* 502 U.S. 874, 112 S.Ct. 213, 116 L.Ed.2d 171 (1991). As previously summarized, the at-

---

**3.** Plaintiff has formally admitted his misconduct, and does not challenge the RVR disciplinary proceedings or the assessed punishment of an 8–month term in the SHU and the forfeiture of 180 days of good-time credit. (FAC at 5–9, attachments at 100). Accordingly, the favorable termination rule of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and *Edwards v. Balisok,*

520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), does not apply to this action. *See Ramirez v. Galaza,* 334 F.3d 850, 856–58 (9th Cir.2003) ("the favorable termination rule applies only to § 1983 suits that affect the fact or duration of a prisoner's confinement"), *cert. denied,* 541 U.S. 1063, 124 S.Ct. 2388, 158 L.Ed.2d 963 (2004).

tachments to plaintiff's FAC indicate that at the initiation of plaintiff's administrative segregation he was provided with written notice and a hearing before the classification committee at which he had the opportunity to present his views. The committee advised plaintiff of its conclusion that given the serious and conspiratorial nature of the misconduct, his presence in the prison's general population would jeopardize individuals' safety and institutional security. The attachments to plaintiff's FAC further indicate that during the ongoing retention in administrative segregation the classification committee conducted reviews of plaintiff's placement at least every three months in hearings which plaintiff attended. The committee advised plaintiff of the reasons he was considered a continuing threat to individuals' safety and institutional security. Thus, plaintiff's own submissions make clear that prison officials provided him with adequate process throughout his stay in administrative segregation. Plaintiff has not and cannot state a claim upon which relief may be granted.

## RECOMMENDATION

In accordance with the foregoing, IT IS RECOMMENDED that the court issue an order: (1) accepting this report and recommendation, (2) granting defendants' Rule 12(b)(6) motion to dismiss, and (3) dismissing the action with prejudice.

June 26, 2006.